UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VIVIAN S. CAHILL and THE ESTATE OF SANDRA F. GARDNER, by its Personal Representative, Michael H. Gardner,<br><br>Plaintiffs<br>vs.<br><br>GREGORY G. FAIA, VERNON H. DECOSSAS III, FAIA & ASSOCIATES, LLC, ADS SQUARED LLC, VISUAL AD GROUP, INC., and DSE LEASING, LLC,<br><br>Defendants | Case No.:<br><br>Judge:<br><br>Magistrate: | 22-cv-00543-SM-DPC<br><br>SUSIE MORGAN<br><br>DONNA PHILLIPS CURRAULT |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXTEND STAY

Pursuant to the Federal Rules of Civil Procedure, Defendants (Gregory G. Faia, Vernon H. Decossas III, Faia & Associates, LLC, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC) hereby submit this "Memorandum in Support of Motion to Extend Stay." The Defendants further represent as follows:

**I.   SUMMARY OF RELIEF REQUESTED**

Since this matter's inception, it has been stayed in order to allow several threshold issues to be resolved in a companion case in Florida. The current stay in this Court expired on September 1, 2023, and so Defendants now seek to extend the stay by an additional 90 days.

**II.   BACKGROUND**

The instant matter arises out of Plaintiffs' alleged ownership of, and alleged right to exercise, certain stock options alleged to exist with respect to three companies presently owned by Defendants. *See* Docket # 17 (Plaintiffs' Amended Complaint) at 3 ("The crux of this litigation are these Options: the Options in DOM, DNC, and DA were executed for the benefit of Vivian and Sandra."). As the Court is now well aware, a related, first-filed matter is currently being

litigated between the Plaintiffs and Defendants (the "Parties") in the U.S. Bankruptcy Court for the Middle District of Florida. *See Faia v. Solares*, No. 19-bk-8638-CPM (21-ap-333-CPM) (M.D. Fla. Bkr.) (the "Florida Litigation"). The Parties are accordingly adverse to one another not only in this matter, but also in the Florida Litigation.

Six months *before* Plaintiffs filed suit in this Court, Defendants initiated the Florida Litigation to establish that the very option rights claimed by Plaintiffs in this matter are invalid and/or were already released in a settlement agreement. *See* Florida Litigation, Docket # 1 at 13-14 ("[EDLA Defendants] respectfully request the Court enter a declaratory judgment declaring that V. Solares Cahill and Gardner as Executor merely held interests in the Alleged Options, if any, as agents and proxies for S. Solares and M. Gardner, and that S. Solares and M. Gardner had full authority to, and did in fact, settle and release any claims premised on the Alleged Options in the Settlement Agreement such that the Alleged Options are no longer valid and enforceable, to the extent such Alleged Options even exist.").

After the Plaintiffs subsequently initiated this case, the Parties submitted joint filings to this Court (a) summarizing the Plaintiffs' claims in this matter; (b) setting forth in detail the claims at issue in the Florida Litigation; and (c) explaining how the two lawsuits present identical questions of fact and law. Given the overlap between this matter and the Florida Litigation, the Parties even cooperated and agreed to submit important threshold questions to a single forum: the Florida bankruptcy court. *See* Docket # 20 at 5 ("**To be clear . . . , the U.S. Bankruptcy Court is scheduled . . . to determine whether the Plaintiffs in this matter have any relevant rights not already released**.") (Joint Motion).

Specifically, in order to streamline the multi-front legal proceedings, Plaintiffs and Defendants agreed to submit a dispositive, common question for resolution by the U.S. Bankruptcy

Page 2

5233682.v1

Court: whether Plaintiffs' claimed option rights actually exist and/or were voided by a 2021 settlement agreement (the "Settlement") reached earlier in the Florida Litigation. *See* Docket # 20-2. To be clear, the question presented in the Florida Litigation is whether any option rights were ever awarded to Plaintiffs and, if so, whether Plaintiffs held the options as mere "nominees" for relatives who were subject to the Settlement. As Plaintiffs and Defendants previously advised this Court jointly, "[t]he resolution of this threshold issue will directly impact whether and to what extent Plaintiffs can proceed with the claims asserted in the Amended Complaint in the instant case." Docket # 20 at 5; Docket # 22 at 2.

In accordance with the Parties' agreement, several months ago, the U.S. Bankruptcy Court concluded a five-day trial in which all Parties to this litigation actively participated. Specifically, from November 7 to November 9, 2022, and then on January 17 and 18, 2023, the U.S. Bankruptcy Court received evidence and testimony relating to the Settlement and the validity of the same option agreements that Plaintiffs seek to enforce in this Court. *See* Florida Litigation, Docket # 354, # 361, # 362, # 406, # 408, # 412. On March 6, 2023, the Parties each submitted proposed findings of fact and conclusions of law to the U.S. Bankruptcy Court judge. *See* Florida Litigation, Docket # 438, # 439.

For the last six months, the Parties have awaited the U.S. Bankruptcy Court's ruling, which has not yet been released, and which could be issued at any time.

### III. CURRENT STAY

By previous rulings, this Court has stayed this proceeding (delaying discovery and Defendants' responsive-pleading deadline) in order to allow the Florida Litigation to conclude. On August 10, 2022, this Court first granted a stay to allow for the conclusion of the originally-scheduled November 2022 Florida Litigation trial. *See* Docket # 21. When the final days of that

trial were delayed until January 2023, this Court extended the relevant stay until March 1, 2023. *See* Docket # 23. Notably, this stay motion and its underlying assertion—that it would not make sense for the same Parties to present the same complex question to two different courts at the same time—was not opposed; quite the opposite, Plaintiffs joined in the motion and the argument that a stay was appropriate. *See id*.

More recently, despite Plaintiffs' shift to opposing any further stay, this Court extended the stay through June 1, 2023, to allow further time for the U.S. Bankruptcy Court to issue its ruling. *See* Docket # 57 (July 14, 2023, Order). In extending the stay at that time, this Court rejected Plaintiffs' new position that the Florida court's forthcoming ruling on Plaintiffs' "nominee status" (with respect to the option agreements at issue) will not in any way impact this E.D. La. matter. *See* Docket # 41 at 4 (Court Ruling) ("Several of Plaintiffs' claims have the potential to be impacted by Plaintiffs' categorization as 'merely nominees.'").

Most recently, in June, when Defendants moved to extend the stay through September 1, 2023, Plaintiffs raised a new series of arguments against a stay. In large part, Plaintiffs just argued that, despite Plaintiffs' submittal of the "nominee question" to the Florida court (and an ensuing five-day trial), this Court should instead intervene and summarily find that Plaintiffs are not "nominees." Plaintiffs then speculated that evidence relevant to the nominee question—which, again, is the question presently before the *Florida court*—is possibly in Hong Kong; so, it was suggested, this Court needs to remove the stay and allow Plaintiffs to pursue and preserve that evidence.

Ultimately, Plaintiffs withdrew their objection to a stay of this case through September 1, and so this Court was not forced to address Plaintiffs' most recent arguments.

**IV.    LAW & ARGUMENT**

The current stay in this Court expired on September 1, 2023, and so Defendants now seek to extend the stay by an additional 90 days. Plaintiffs will presumably re-assert the same reasons for opposing a stay of this case. As set forth below, this Court should quickly reject any such arguments.

    **A.**    **This Court has vast discretion to extend the stay again.**

It is well-established that "granting a stay is within the court's discretion and a stay is appropriate when it serves the interests of judicial economy and efficiency." *Trosclair v. Medtronic, Inc.*, No. CIV.A. 07-7565, 2008 WL 89662, at *1 (E.D. La. Jan. 7, 2008). As summarized in another E.D.La. case:

> A district court has inherent power to stay proceedings. The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." The decision to stay a proceeding is best determined by the "exercise of judgment, which must weigh competing interests and maintain an even balance."

*Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Petrus v. Bowen*, 833 F.2d 581 (5th Cir. 1987)).

In the present case, a short, limited stay is justified in order to allow another federal court to rule on a dispositive issue: whether the Plaintiffs' alleged option rights, which are the basis of essentially all claims presented to this Court,[1] exist and survived the 2021 Settlement in the Florida

---

[1] *See* Docket # 55 (Second Amended Complaint) at 3 ("The crux of this litigation are these Options."); ¶198 ("Vivian and Sandra, as the owners of DA by virtue of their exercise of the Options, have also been injured . . ."); ¶12 ("Plaintiffs Vivian and the Estate, individually, and as owners of the equity interests in the Three Companies by virtue of the exercise of the Options, also assert causes of action . . . involving breach of fiduciary duty, breach of contract, and conversion."); p. 3 ("The crux of this litigation are these Options: the Options in DOM, DNC, and DA were executed for the benefit of Vivian and Sandra."); ¶ 106 ("[Ad Squared] continues to generate substantial revenue and profits that rightfully belong to DA and its owners, Vivian and Sandra, by virtue of their exercise of the Options."); ¶ 356 ("Through their ownership of DA, Vivian and Sandra have a direct and protectable property interest in the Yahoo! contract."); ¶ 396 ("As the owners of DA, Vivian and Sandra possess a direct and protectable property interest in DA's assets."); ¶ 414 ("As the owners of DA, Plaintiffs Vivian and Sandra have been deprived of a legitimate business opportunity to operate their company."); ¶ 434 ("In the Options, Faia and Decossas covenanted and warranted not to transfer, assign, or diminish in value the assets of DA."); ¶ 515 ("Plaintiffs Vivian and Sandra should own DA. They cannot operate their company due to the loss of DA's assets."); ¶ 530 ("Faia and Decossas fraudulently induced Vivian

Litigation. As the resolution of this issue will determine whether Plaintiffs can maintain their option-related claims in this matter, it is eminently reasonable to temporarily stay this case until the relevant question is answered. Not only would a stay avoid potentially needless costs, but there is also no discernable prejudice in requiring the Parties to wait an extra 90 days before proceeding. Moreover, a stay is particularly appropriate given the enormous amount of time and expenses spent by the Parties in the last two years to obtain the awaited ruling from the U.S. Bankruptcy Court.[2]

### B.  Having explicitly agreed to submit the "nominee question" to the Florida court, it is exceedingly improper for Plaintiffs to now ask this Court to rule on the nominee question.

In Plaintiffs' most recent briefing, Plaintiffs asked this Court to find that events in the Florida nominee trial have proven that this Court is the appropriate forum for resolution of the "nominee question." *See* Docket # 48 at 2-6. Offering some tidbits of testimony from the Florida litigation, Plaintiffs then suggest that this Court should simply skip any trial or evidentiary hearing and go ahead and rule on the same "nominee question" currently pending in Florida. *See* Docket # 48 at 9-13.

---

and Sandra not to exercise their Options in DNC, DOM, and DA."); ¶ 531 ("Faia and Decossas breached their fiduciary duties owing to DNC and DA and therefore Plaintiffs when they fraudulently converted assets belong to these companies."); ¶ 542 ("As further detailed with specificity *ad nauseum*, Faia and Decossas have engaged in a pattern of fraudulent acts, all of which were intended to deprive the Plaintiffs of their assets and ownership interests in DNC, DOM, and DA."); ¶ 559 ("Faia and Decossas defrauded Vivian and Sandra into thinking that their ownership interests in DA was secure and protected."); ¶ 565 ("By virtue of the duly executed Options for DNC, DOM, and DA, vesting ownership of these companies with the Plaintiffs, . . . the Plaintiffs assert that Faia and Decossas should be compelled to specifically perform their obligations as set forth in those agreements."); ¶ 578 ("Faia and Decossas have perpetrated a fraud on the Plaintiffs, and they continue to perpetrate a fraud on the Plaintiffs by denying Plaintiffs access to the Options.").

[2] In similar situations, federal courts have not hesitated to stay a case, especially for a defined period of time, to allow a related proceeding to conclude or resolve a relevant question. *See, e.g.*, *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."); *Hill v. DePuy Orthopaedics, Inc*., No. CIV.A. 11-2265, 2011 WL 5078619, at *2 (E.D. La. Oct. 26, 2011) ("[T]he policies of efficiency and consistency of pre-trial rulings will be furthered by a stay of the proceedings in this Court pending the MDL panel's decision."); *In re Papst Licensing GmbH Pat. Litig*., No. CIV.A. 99-MD-1298, 2006 WL 1004990, at *2 (E.D. La. Apr. 10, 2006) ("Clearly . . . this Court has discretion to stay a case to conserve judicial resources where a related proceeding will resolve pertinent issues.").

Plaintiffs' position is illogical, indefensible, and legally barred. Over a year ago, Plaintiffs specifically agreed that the disputed "nominee question" would be litigated in Florida and resolved in a particular pending lawsuit. *See* **Exhibit 1**. In a consent judgment entered by that court, Plaintiffs agreed to the following stipulation:

> During the first phase of the Trial (as defined below) (the "Nominee Phase"), the Court will hold a trial to determine through appropriate final judgment the following: whether any of the interests or rights claimed or possessed by Defendants Vivian Solares Cahill ("Ms. Cahill") and Sandra F. Gardner ("Ms. Gardner") and/or the Estate of Sandra F. Gardner, through Michael H. Gardner, its Personal Representative (the "Estate"), with respect to (a) DOM Holdings, Inc., a corporation organized under the laws of Delaware ("DOM"); (b) DNC Holdings, Inc., a corporation organized under the laws of Delaware ("DNC"), and (c) Domain Apps, LLC, a limited liability company organized under the laws of Louisiana ("DA," and together with DOM and DNC, collectively referred to as the "Three Companies"), if any, were granted to, owned by, possessed by or otherwise conveyed to Ms. Cahill, Ms. Gardner and/or the Estate as mere nominees or in some similar capacity for the benefit of Solares and/or Gardner, (individually) and, therefore the interests or rights claimed by Ms. Cahill, Ms. Gardner and/or the Estate in the Three Companies are governed by the Order Granting Motion to Approve Compromise (Doc 573) entered by the Bankruptcy Court on February 11, 2021 (Doc. No. 576) and the terms and provisions of the Settlement Agreement and Release approved by that order (the "Nominee Issues"). Necessarily implicit in the Court's Trial of the Nominee Issue is a determination by the Court of whether any rights or interests were granted to Ms. Cahill or Ms. Gardner (or her Estate) at all.

Exhibit 1 at 2-3.

Plaintiffs and Defendants not only agreed to submit the nominee question to the Florida court, but the Parties thereafter spent hundreds of thousands of dollars conducting discovery, participating in numerous hearings and other pre-trial matters, and completing a five-day trial. It is absurd to suggest that the fairer and more efficient path now is to have a different court—one that has not received any of the voluminous evidence or testimony—summarily intercede and rule in Plaintiffs' favor. Logic forbids that result, as do basic principles of contract law, res judicata,[3]

---

[3] *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 858 (5th Cir. 2000) ("A consent judgment, also known as a consent decree, is freely negotiated by the parties and has the full effect of res judicata.").

estoppel, and waiver.[4] *See, e.g.*, *Seattle-First Nat. Bank v. Manges*, 900 F.2d 795, 798–99 (5th Cir. 1990) ("The primary issue is whether the district court abused its discretion in . . . enforc[ing] the negotiated choice of venue provision contained in the stipulation it had expressly approved in the judgment. . . . As the magistrate observed, a forum selection clause is prima facie valid and should be enforced unless the resisting party shows that enforcement would be unreasonable.").

It may be taking longer than Plaintiffs expected for the Florida court to issue a ruling on the nominee question. But Plaintiffs' trial/venue stipulation was not revocable, and it was not conditioned on the Florida court complying with Plaintiffs' arbitrary schedule. *See* Exhibit 1. Moreover, the alternative that Plaintiffs suggest—that this Court should simply "start over" and pretend nothing has happened in Florida—is no solution. The U.S. Bankruptcy Court in Florida has overseen the progression of the underlying dispute for the last *four years*. That Court is intimately familiar with the issues, parties, claims, and evidence, and is better positioned to rule quickly than any other court could possibly be. The Florida court should accordingly be given as many extensions as are reasonably necessary for it to address all evidence and rule on all of the questions that it has been asked to resolve (including the 81 pages of proposed nominee-issue post-trial findings that Plaintiffs alone have submitted). *See* Florida Litigation, Docket # 438.

Nor should Plaintiffs be heard to complain about the time the Florida court needs to sift through the evidence. It is, after all, Plaintiffs and their family members (who also happen to serve as Plaintiffs' attorneys) who only last week disclosed some of the most relevant nominee evidence that may need to be considered by the Florida court. For instance, in wrongfully-withheld

---

[4] *Seattle-First Nat. Bank v. Manges*, 900 F.2d 795, 799 (5th Cir. 1990) ("Even if that were not the case, the Manges defendants waived venue in the Southern District by agreeing to the venue selection clause [in the stipulated judgment]."); *Duke Univ. v. Sandoz Inc.*, No. 2:17-CV-00528-JRG, 2018 WL 4258520, at *1 n.1 (E.D. Tex. Apr. 3, 2018) ("[A]s a result of the Parties' stipulation, the Court declines to substantively address whether venue is proper.").

documents produced just five days ago, it was confirmed that Plaintiffs are part of a three-year-old conspiracy to act as litigation pawns on behalf of Sigmund Solares and Michael Gardner. While Sigmund Solares and Plaintiffs have denied such a conspiracy and, in fact, testified it did not exist, their recently-disclosed communications tell a very different story. In just one three-day exchange between Sigmund Solares and Plaintiff Michael Gardner in November 2020, they somehow managed to admit (a) that they actually own the corporate assets now claimed by Vivian Cahill and Sandra Gardner's "estate", (b) that they had no intention of honoring any settlement agreement with Defendants, (c) that they were actively concealing relevant evidence in the then-pending litigation, and (d) that their long-term plan was, after a settlement, to use Vivian Cahill and Sandra Gardner's estate as pawn plaintiffs to instigate further lawsuits:

> **Gardner**: Just because we settle does not mean we cannot do things in the future to be a thorn in their sides. But doing it while we hold some of our assets back in our hands, so they are not destroying, hiding them.
>
> . . . .
>
> **Solares**: The lawsuit is one battle, of a war – so think of it like that. We do not want a pyric victory. getting [the] assets we can under control ASAP, and starting to build and or sell to maximize value maybe a better way of spending 80% of our time. the other 20% can be used to fight other battles in this war. We can be creative and we know what they say about the patient man.
>
> . . . .
>
> **Solares**: One thing I can say **no win would be realistic while holding back as much evidence as we held back**.
>
> . . . .
>
> **Gardner**: I think these are fair points, I agree with trying to settle this battle and continue the war.
>
> . . . .
>
> **Gardner**: Gaining access to some assets free and clear, so you can buy your wife a car!! *(smile)' (joking) and still being able to continue the war on our terms and not out of control like it is now, has some merit.
>
> . . . .
>
> **Gardner**: Lets get our assets, stop burning money with [attorneys] and pick some new battle[fields]
>
> . . . .

Page 9

| | |
|---|---|
| **Gardner**: | I think after settlement, focusing on criminal aspect of things and lobbying and putting together evidence and power points to try and get people interested will be worth while. **Then initiating fresh lawsuits against them personally for our sisters/heirs could also be satisfying**. |
| **Solares**: | Yep. Which is why we should get them to use CPA time to put things on paper. I would also like the facts on tax benefits. IF we can book 20m or whatever loss, and be able to use that to not pay taxes on first 20m out – that has benefits – especially with uncle joe promising to raise taxes. |

*See* Exhibit 2 (bold added). These exchanges will certainly be of interest to the Florida court, where Plaintiffs have vehemently denied this narrative, and where Plaintiff Vivian Cahill testified—in response to direct questioning by the judge—that she later and alone came up with the idea of enforcing "her" options against Defendants. *See* **Exhibit 3** at 237 ("**Court:** [Solares] didn't come to you first? **Cahill:** No, he did not. **Court:** And he didn't suggest that you get a lawyer? **Cahill:** No, he did not. I had asked his advice.").

To be clear, Defendants are not asking this Court to remark on the unbelievability of Plaintiffs' claims. What this Court should do, however, is (a) note that it is Plaintiffs and their relative-lawyers who are contributing to delays in Florida; and (b) find that Plaintiffs should not be rewarded with their explicitly-stated goal of pursuing multiple lawsuits that will "ruin and haunt [Defendants'] families for generations." *See* Exhibit 4. And because it is the Florida court that has been deceived and whose orders have been so flagrantly violated, it should be given the appropriate flexibility and time to deal with that misconduct and determine its scope and consequences.

**C.    Plaintiffs' purported need to conduct "Hong Kong discovery" is a hollow pretext, and one which Defendants have fully addressed.**

Several months ago, Plaintiffs argued to this Court that they needed to be able to use this proceeding to inquire into the possibility of relevant documents in Hong Kong, as such documents would be relevant to the nominee question (the question currently before the *Florida* court). *See*

Page 10

5233682.v1

Docket # 48 at 6-8. Defendants responded to this argument by questioning why this Court would be the proper forum for discovery in connection with a factual question that was just submitted to another court. *See* Docket # 53 at 4-6.[5] Defendants then pointed out that the allegedly-new information was not, in fact, new at all. *Id*. Finally, to alleviate any lingering concerns, Defendants filed a sworn affidavit, with supporting document references, verifying their complete disclosure of possibly-relevant "Hong Kong" documents and that Defendants lacked any further information. *See* Docket # 58, Docket # 59.[6] Notably, Plaintiffs have not complained about the completeness of Defendants affidavits or utilized the last two months to inform the Florida court of any need for further "nominee discovery."

―――  ―  ―――

WHEREFORE, Defendants (Gregory G. Faia, Vernon H. Decossas III, Faia & Associates, LLC, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC) respectfully request that the Court:

(a) GRANT this Motion to Extend Stay, staying the advancement of this matter until at least December 1, 2023, or further Court order;

(b) ORDER that Defendants be granted until at least December 1, 2023, to file responsive pleadings and/or any applicable Rule-12 motions; and

(c) ORDER that no written discovery shall be served in this matter, nor shall any discovery otherwise be conducted, until at least December 1, 2023.

---

[5] Defendants hereby incorporate by reference the reply memorandum that they previously filed on June 27, 2023, which addressed Plaintiffs' "Hong Kong discovery" argument in more detail. *See* Doc. # 53.
[6] Defendants hereby incorporate by reference the cited affidavits relating to Defendants' knowledge of any Hong Kong repository of relevant documents. *See* Docket # 58, Docket # 59.

Respectfully submitted,

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P

By:      *Ryan K. French*
Robert W. Barton, Bar # 22936
   Bob.barton@taylorporter.com
John S. Campbell, III, Bar # 23674
   Johnstone.campbell@taylorporter.com
Ryan K. French, Bar # 34555
   ryan.french@taylorporter.com
450 Laurel Street, 8th Floor (70801)
P. O. Box 2471
Baton Rouge, LA 70821-2471
Phone:  (225) 381-0262

*Attorneys for Vernon H. Decossas III, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC*

JONES WALKER L.L.P

Michael W. Magner, Bar # 1206
   mmagner@joneswalker.com
Andrew R. Lee, Bar # 21196
   alee@joneswalker.com
Peter J. Kee, Bar # 34860
   pkee@joneswalker.com
201 St. Charles Ave. Suite 5100
New Orleans, LA 70170
Phone:  (504) 589-8316

*Attorneys for Gregory G. Faia, Faia & Associates, LLC, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC*

FRILOT, LLC

David S. Daly, Bar # 20774
   ddaly@frilot.com
1100 Poydras St. Suite 3700
New Orleans, LA 70163
Phone:  (504) 599-8139

*Attorneys for Gregory G. Faia and Faia & Associates, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **6th** day of **September**, 2023, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and notice of this filing was accordingly sent to all counsel of record through the Court's electronic filing system.

/s/   *Ryan K. French*
Ryan K. French