```
            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION


- - - - - - - - - - - - - - - -x
IN RE:                          :
                                :
THE PRODUCERS, INC.             : Case No. 8:19-bk-08638-CPM
            Debtor              :       Chapter 11
- - - - - - - - - - - - - - - -x
GREGORY FAIA, et al             :
            Plaintiffs          :
v.                              : Adv. No. 8:21-ap-00333-CPM
SIGMUND SOLARES, et al          :
            Defendants          :
- - - - - - - - - - - - - - - -x
                                  U.S. Courthouse
                                  801 North Florida Avenue
                                  Tampa, Florida 33602
                                  Held January 17, 2023
```

**TRANSCRIPT OF HEARING**
[Day 4, Vol. IV of Trial on Complaint
in Adv. No. 8:21-ap-00333]

**BEFORE THE HONORABLE CATHERINE PEEK MCEWEN
UNITED STATES BANKRUPTCY JUDGE**

*PROCEEDINGS RECORDED BY COURT PERSONNEL
VIA IN-PERSON, ZOOM AND/OR TELEPHONE.
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE
APPROVED BY ADMINISTRATIVE OFFICE OF U.S. COURTS.*

_____

**JOHNSON TRANSCRIPTION SERVICE**
6532 Thoroughbred Loop
Odessa, Florida 33556
(813) 920-1466

A P P E A R A N C E S:

| | |
|---|---|
| For the Debtor: | ALBERTO F. GOMEZ, JR., Esquire<br>Johnson Pope<br>403 E. Jackson Street<br>Suite 3100<br>Tampa, Florida 33602<br>813-225-2500<br>al@jpfirm.com |
| For Vernon Decossas,<br>DNC Holdings, Inc., DOM<br>Holdings, Inc., Domain<br>Apps, LLC: | SCOTT A. UNDERWOOD, Esquire<br>ADAM GILBERT, Esquire<br>MELISSA SYDOW, Esquire<br>Underwood Murray<br>100 N. Tampa St., Suite 2325<br>Tampa, Florida 33602<br>813-540-8401<br>sunderwood@underwoodmurray.com<br>agilbert@underwoodmurray.com<br>msydow@underwoodmurray.com |
| | RYAN K. FRENCH, Esquire<br>Taylor Porter<br>450 Laurel St., 8th Floor<br>Baton Rouge, Louisiana 70821<br>225-381-0262<br>ryan.french@taylorporter.com |
| For Gregory G. Faia: | DONALD KIRK, Esquire<br>LUIGI ORENGO, JR., Esquire<br>Carlton Fields<br>4221 W. Boy Scout Blvd.<br>Suite 1000<br>Tampa, Florida 33607-5780<br>813-223-7000<br>dkirk@carltonfields.com<br>lorengo@carltonfields.com |
| For the Faia and<br>Decossas Plaintiffs: | MICHAEL W. MAGNER, Esquire<br>Jones Walker<br>201 St. Charles Avenue<br>Suite 5100<br>New Orleans, Louisiana 70170<br>504-582-8316<br>mmagner@joneswalker.com |

```
A P P E A R A N C E S:
(continued...)

For Vivian Cahill and
the Estate of Sandra
Gardner:                    W. GLENN BURNS, Esquire
                            DeWAYNE WILLIAMS, Esquire
                            Aaron & Gianna, PLC
                            201 St. Charles Avenue
                            Suite 3800
                            New Orleans, Louisiana 70170
                            504-569-1807
                            gburns@aarongianna.com
                            dwilliams@aarongianna.com

For Sigmund Solares         GLENN GALLAGHER, Esquire
Michael Gardner,            7980 Bayou Drive
Individually:               Largo, Florida 33777
                            813-545-5817
                            ggallagher422@gmail.com

Also Appearing:             Sigmund Solares
                            Gregory Faia
                            Vivian Cahill
                            Vernon Decossas
                            Karly Thompson
                            Nicole Mihara
                            Aaron Washington
```

W I T N E S S E S

|  | Page |
|---|---|
| **MICHAEL H. GARDNER** | |
| Direct Examination by Mr. Burns | 21 |
| Cross/Direct examination by Mr. Kirk | 48 |
| Redirect/Cross-examination by Mr. Burns | 171 |
| **VIVIAN CAHILL** | |
| Direct examination by Mr. Williams | 188 |
| Cross-examination by Mr. Magner | 208 |
| Redirect examination by Mr. Williams | 234 |
| **SIGMUND SOLARES** | |
| Direct Examination by Mr. Burns | 241 |

```
 1                THE WITNESS:  No.  No.
 2                THE COURT:  All right.  You said -- hold on a
 3    minute.
 4                When it came time, whatever time that was, which
 5    maybe we can pinpoint it, for these options to be discussed
 6    with an attorney, was it your brother that suggested to you
 7    that you go do that?
 8                THE WITNESS:  I had talked to my brother and --
 9                THE COURT:  No, who brought up the subject
10    first?
11                THE WITNESS:  I could not honestly answer that.
12                THE COURT:  With such -- this being a big deal
13    and --
14                THE WITNESS:  We were just talking about it
15    amongst each other.
16                THE COURT:  Did you say, "Hey, remember that
17    option that you had me go by and sign," as he says it in
18    this email.  He said, "Remember, that was back when I told
19    you that you would have to go to the office and sign
20    documents?"
21                THE WITNESS:  Yes.
22                THE COURT:  Is that something that you aired
23    again with him recently, to say, "Hey, remember that
24    email" --
25                THE WITNESS:  Yes, after everything was settled.
```

```
 1              THE COURT:  But this is after you got the
 2    subpoena in 2020.  So, when do you have a memory of your
 3    going to him and say, "Remember, you had me go somewhere
 4    and sign something?  I want that stuff now."
 5              THE WITNESS:  Right.
 6              THE COURT:  You said that?
 7              THE WITNESS:  I said that.
 8              THE COURT:  He didn't come to you first?
 9              THE WITNESS:  No, he did not.
10              THE COURT:  And he didn't suggest that you get a
11    lawyer?
12              THE WITNESS:  No, he did not.  I had asked his
13    advice.
14              THE COURT:  What was it that had you think about
15    it and want to exercise it now?
16              THE WITNESS:  Once I found out from everything
17    that came to light, how much the companies were worth, and
18    they were worth a lot of money.
19              THE COURT:  Were you aware that your brother
20    signed documents that would transfer away assets from those
21    companies?
22              THE WITNESS:  I was not aware of those particular
23    companies.  I mean I knew that they --
24              THE COURT:  Would that cause you to think your
25    brother was acting in your best interest if he signed the
```

```
 1   Settlement Agreement?
 2            THE WITNESS:  I mean I wasn't involved in the
 3   Settlement Agreement, so --
 4            THE COURT:  I know you weren't.  That's why we're
 5   having this now.
 6            THE WITNESS:  Right.
 7            THE COURT:  So, how did you figure out that the
 8   companies had a lot of money when, apparently, they
 9   transferred a bunch of assets away.
10            THE WITNESS:  From after reviewing everything.
11   When everything was over, when I was with my brother a lot
12   and he was telling me the different things about whatever
13   -- everything that happened and what revelations were made.
14            THE COURT:  Did he tell you that the companies
15   transferred assets away?
16            THE WITNESS:  I don't recall exactly how he
17   phrased it to me.
18            THE COURT:  Okay.  But you authorized him to do
19   whatever to get our options exercised?
20            THE WITNESS:  I did.
21            THE COURT:  Okay. Any follow-on questions?
22            MR. MAGNER:  No, ma'am.
23            MR. WILLIAMS:  No, Your Honor.
24            MR. BURNS:  No, Your Honor.
25            THE COURT:  Okay, that's all I had.
```