UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VIVIAN S. CAHILL AND THE ESTATE
OF SANDRA F. GARDNER, BY ITS PERSONAL
REPRESENTATIVE, MICHAEL H. GARDNER,

    *Plaintiffs,*

Case No. 2:22-cv-00543-SM-DPC

v.

GREGORY FAIA, VERNON H. DECOSSAS, III,
FAIA & ASSOCIATES, LLC, ADS SQUARED LLC,
VISUAL AD GROUP, INC. AND DSE LEASING, LLC,

    *Defendants*
_____/

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO EXTEND STAY [R. DOC. 60]

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Vivian S. Cahill ("Ms. Cahill") and the Estate of Sandra F. Gardner, through its personal representative, Michael H. Gardner, ("the Estate") (collectively "Plaintiffs"), who respectfully submit this opposition to Defendants' Motion to Extend Stay (R. Doc. 60) for the following reasons to-wit:

### ARGUMENT

The Defendants' Motion and supporting memorandum are telling. As they acknowledge, the trial in this matter was closed 232 days ago (January 18, 2023). As they further acknowledge, the parties submitted Proposed Findings of Fact and Conclusions of Law 185 days ago (March 6, 2023). Additionally, all parties acknowledge that the *sole* issue to be determined by the Florida bankruptcy judge was whether Plaintiffs herein were nominees of Sigmund Solares and Michael Gardner, who, it should be noted, are *not* before this Court. This is the *fifth* time Defendants have

1

requested that this Court stay this matter because of the Florida bankruptcy court, and the third time such a request has been made over the objection of the Plaintiffs. Defendants have even cunningly increased the length of their stay requests from 60 to 90 days in their past two motions.

Recognizing that this Court intimated at the last hearing on their request to extend the stay that at some point enough is enough and this matter must proceed, Defendants have now switched tactics and intentionally and inappropriately: (1) misstated Plaintiffs' position; and (2) purport to present *to this Court* supposed new "evidence" on the nominee issue: (a) that Defendants claim is exclusively in the purview of the Florida bankruptcy court; and (b) that has not been vetted, identified, or authenticated by these Plaintiffs or this Court. This is all done, in Plaintiffs' opinion, in an attempt to distract this Court from the actual issue before it relative to a Motion to Stay, and to try to ignite this Court's passions against Plaintiffs, who notably, are neither the authors, receivers, or copiers on this new "evidence."

### I. PLAINTIFFS' CLAIMS FOR FRAUD ARE UNAFFECTED BY A RULING FROM THE FLORIDA TPI BANKRUPTCY COURT.

The issue before this Court is clear. In its previous Order extending the stay until June 1, 2023, this Court stated the following with respect to Plaintiffs' objection:

> Moreover, the Court is not convinced Plaintiffs' argument—that the outcome of the Florida proceeding will have no impact on Plaintiffs' claims before this Court— holds merit. Plaintiffs maintain nine claims in this action under the following theories: (1) RICO violations; (2) breach of fiduciary duty; (3) fraud; (4) Louisiana Unfair Trade Practices Act; (5) specific performance; (6) breach of contract; (7) preliminary injunction; (8) permanent injunction; and (9) declaratory relief. Several of Plaintiffs' claims have the potential to be impacted by Plaintiffs' categorization as "merely nominees."

Notably, this was *before* this Court allowed, *with consent from the Defendants*, Plaintiffs to amend their Complaint. Plaintiffs' Complaint, as amended, maintains that either: (1) they are the actual owners of the option agreements at issue herein; or (2) Defendants fraudulently made

2

them believe that they were the actual owners of the option agreements at issue herein. In either case, the aforementioned nine (9) causes of action go forward. Plaintiffs submit that the ruling in the Florida court will only determine whether option (1) or option (2) goes forward. However, no matter what the ruling is by the Florida bankruptcy court, one of the two theories will most certainly survive in this Court. That is, and has always been, Plaintiffs argument, and Defendants have never provided any defense or response to *that* argument. Rather, as can be seen in Defendants most recent filing, they disingenuously attempt to reframe Plaintiffs' argument to incite this Court's passions against Plaintiffs.

## II. PLAINTIFFS ARE NOT ASKING THIS COURT TO RETRY THE NOMINEE ISSUE.

Plaintiffs *do* believe that the Florida bankruptcy court does not have jurisdiction to decide the nominee issue. However, that is an issue that likely will not be resolved for years given the inevitable appeals to follow the Florida bankruptcy court's ruling either way. However, Plaintiffs have not asked this Court to litigate that issue to the exclusion of the Florida bankruptcy court. Rather, as articulated previously, Plaintiffs maintain that either they themselves own the option (are not nominees) or they were misled to believe that they owned the options by Defendants when they did not (are purported nominees). In either case, Plaintiffs maintain that they are allowed to either exercise their options with any compensable damages or be compensated in damages for their inability to exercise the options that they were misled to believe that they had. That is the issue presented before this Court. It really is just that simple. Yet, Defendants spend the majority of their memorandum in support disingenuously asserting that Plaintiffs want this Court to retry the nominee issue. The nominee issue *may* be a significant issue in the Florida litigation, but in *this* litigation it is really a tangential issue. The central issue in *this* litigation is the fraud and deceit of the Defendants. Whether Plaintiffs are determined to be nominees or not does not erase the

fraud committed upon them by the Defendants resulting in damage to them.  Defendants steer clear of this issue because they know that this Court, and *only* this Court, has the jurisdiction and authority to resolve *that* issue.

### III. DEFENDANTS PURPORTED "NEW EVIDENCE" ACTUALLY SUPPORTS PLAINTIFFS' POSITION THAT A STAY IS NOT WARRANTED.

The attempt to introduce into this discussion this "new evidence" on the nominee issue reeks of desperation.  Defendants have been unmoving on their position that "all things nominee" are solely within the purview of the Florida bankruptcy court.  Yet, realizing that their position relative to the continuation of a stay is untenable at this point, Defendants seek to present to this Court purported "new evidence" *on the nominee issue*.  Defendants have previously argued to this Court that it should, in no way, impede on the Florida bankruptcy court's purported authority to decide the nominee issue.  Yet, Defendants present to this Court purported "new evidence" *on the nominee issue* for this Court's consideration in connection with their *fifth* request for a stay.

Plaintiffs are happy to have this Court decide the nominee issue, as this Court will strictly apply Louisiana law, which is crystal clear.  However, Plaintiffs respect this Court's expression that it is hesitant to do so.  Of particular note, however, is the fact that Defendants purported "new evidence" actually supports Plaintiffs' position that a stay is not warranted in this case.  The "new evidence" is purportedly e-mails between Sigmund Solares (Vivian Cahill's brother) and Michael Gardner (Sandra Gardner's son).  No matter how bad Defendants want it to be so, Sigmund Solares and Vivian Cahill are *not* the same person, and the Estate of Sandra Gardner and Michael Gardner, individually, are *not* the same person.  This is of particular import when it comes to the nominee issue under Louisiana law.

4

Defendants' "new evidence" *does not* include any evidence, direct or even circumstantial, that Plaintiffs herein had anything to do with any purported plans, *according to Defendants*, of Sigmund Solares, Michael Gardner, Gregory Faia, or Vernon Decossas, III. Under Louisiana law, a nominee of a contract is categorized as a mandatary. *Petrocana, Inc. v. William H. Kenny Consultants, Ltd.*, 595 So. 2d 384, 385 (La. Ct. App. 1992) ("The term "nominee" has been defined by the jurisprudence of this State as a mandatary") (see also *Evergreen Plantation, Inv. V. Zunamon*, 291 So.2d 414 (La.App. 2 Cir. 1974); *United States v. Lewis*, 2013 U.S. Dist. LEXIS 188714 (USDC WDLA 05/03/13). "Manifestly, the nominee is not really a third party but only an 'alter ego' of the original vendee and as such nominee he stands in the same position as the one he represents, the original vendee." *Evergreen @* 417. Furthermore, the establishment of a mandatary **requires a contract** between the mandatary and the principal.

**Louisiana Civil Code article 2989** defines this relationship as follows:

A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal.

Importantly, the authority of a mandatary to acquire property for the principal requires some form of express authorization given by the principal. In other words, there is no general power of mandate assumed or presumed under a contract of mandate for the acquisition of immovable or movable property—corporeal or incorporeal—by the mandatary.

**Louisiana Civil Code article 2996** provides in pertinent part:

The authority to alienate, acquire, encumber, or lease a thing must be given expressly. (emphasis added).

There is absolutely no evidence of a contract of mandate between Sigmund Solares and Vivian Solares Cahill, or between Michael Gardner and Sandra Gardner, in which Vivian Solares Cahill or Sandra Gardner were granted the "express authority" to acquire stock or a membership interest in the Three Companies at issue in this litigation *for* Sigmund Solares or Michael Gardner.

5

In fact, the exact opposite transpired. On the face of the stock option agreements, the right to acquire those companies vested **in the names of Vivian Solares Cahill and/or Sandra Gardner in their own names and capacities**.

In other words, Defendants' contention appears to be that *Defendants*, along with Sigmund Solares and Michael Gardner, all knew that Vivian Cahill and Sandra Gardner were simply supposed to be the nominees of Sigmund Solares and Michael Gardner.  However, there is *no* evidence that Vivian Solares and/or Sandra Gardner were aware, much less *agreed to*, this supposed plan.  So even if this Court accepts Defendants' position that this "new evidence" supports their position that Sigmund Solares and Michael Gardner were "in on" *Defendants'* plan to make Vivian Cahill and Sandra Gardner nominees, there is absolutely no evidence that Vivian Cahill or Sandra Gardner knew or were a part of *Defndants'* plan.  Thus, if the Florida bankruptcy court rules somehow that Plaintiffs herein were nominees, Defendants' "new evidence" supports Plaintiffs' Amended Complaint that Defendants defrauded them into believing that they were the actual owners of the options.  As such, there is no basis for continuing the stay in this matter because no ruling of the Florida bankruptcy court will terminate the entirety of Plaintiffs' claims herein, and, in fact, Defendants' "new evidence" supports Plaintiffs' Amended Complaint.

## IV.   DEFENDANTS HAVE FORECASTED THEIR NEXT STEPS, WHICH THEY WILL TAKE NO MATTER HOW THE FLORIDA BANKRUPTCY COURT RULES.

At every opportunity to do so during the two oral arguments held before this Court, counsel for Defendants took the opportunity to "advise" this Court that Defendants will be initially filing a motion to transfer this case to Florida followed by exceptions.  This motion practice will occur no matter how the Florida bankruptcy court rules.  Given same, this Court should at least allow this motion practice to take place, and after same it can possibly revisit the stay issue if the Florida

6

bankruptcy court has still not ruled. However, to simply let this matter sit, even though this motion practice will take place no matter how the Florida bankruptcy court rules, is inefficient and prejudicial to the Plaintiffs, who are entitled to move their case forward.

## CONCLUSION

Thus, Plaintiffs Vivian S. Cahill and Michael H. Gardner, as personal representative for the Estate of Sandra F. Gardner, respectfully request this Court deny the motion to extend the stay.

Dated:  New Orleans, Louisiana  
            September 18, 2023

AARON & GIANNA, PLC.  
201 St. Charles Avenue – Suite 3800  
New Orleans, LA 70170  
(504) 569-1800 (telephone)  
(504) 569-1801 (fax)

By: _____/s/ W. Glenn Burns_____  
W. Glenn Burns, Esq.  
Louisiana Bar No. 03698  
gburns@aarongianna.com  
William D. Aaron, Jr., Esq.  
Louisiana Bar No. 02267  
waaron@aarongianna.com  
DeWayne L. Williams, Esq.  
Louisiana Bar No. 27685  
dwilliams@aarongianna.com

*Counsel for Vivian Solares Cahill and Estate of Sandra F. Gardner*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Requests on all counsel record by electronic correspondence or by depositing same in the U.S. Mail, postage prepaid, this 8th day of September, 2023.

_____/s/ W. Glenn Burns_____  
W. Glenn Burns, Esq.  
Louisiana Bar No. 03698  
gburns@aarongianna.com