UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VIVIAN S. CAHILL and THE ESTATE OF SANDRA F. GARDNER, by its Personal Representative, Michael H. Gardner, | : : : : | Case No.: 22-cv-00543-SM-DPC |
| Plaintiffs vs. | : : : : | Judge: SUSIE MORGAN |
| GREGORY G. FAIA, VERNON H. DECOSSAS III, FAIA & ASSOCIATES, LLC, ADS SQUARED LLC, VISUAL AD GROUP, INC., and DSE LEASING, LLC, | : : : : : | Magistrate: DONNA PHILLIPS CURRAULT |
| Defendants | | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXTEND STAY**

Pursuant to the Federal Rules of Civil Procedure, Defendants (Gregory G. Faia, Vernon H. Decossas III, Faia & Associates, LLC, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC) hereby submit this "Reply Memorandum in Support of Motion to Extend Stay." The Defendants further represent as follows:

**I.      SUMMARY OF RELIEF REQUESTED and PLAINTIFFS' OPPOSITION**

As all Parties originally conceded was sensible, this matter was stayed pending the resolution of "a dispositive threshold question"[1] in a Florida proceeding. Defendants have sought to extend the resulting stay by 90 more days, but Plaintiffs oppose any further stay. *See* Docket ## 60, 62. Each of Plaintiffs' proffered objections is addressed briefly below.

**II.     LAW & ARGUMENT**

   **A.     Plaintiffs' attempt to impose an arbitrary time limit on the Florida bankruptcy court is unreasonable.**

---

[1] *See* Docket # 20 at ¶ 11.

Plaintiffs' first argument is that, "at some point enough is enough and this matter must proceed." According to Plaintiffs, because the Florida court has already been allowed 185 days to rule, no further stay is justified.

Of course, Plaintiffs' position lacks any rationale, legal citation, or explanation. The Florida court—with the Plaintiffs' consent—has spent the last two years shepherding a dispositive legal question through discovery, motion practice, numerous hearings, and, ultimately, a five-day trial. However, according to Plaintiffs, because six months have now passed without a final ruling, it would somehow make sense for this Court to dive into the same issues and start the same 2-year process all over again.

From a judicial efficiency perspective, Plaintiffs' suggestion is pretty ridiculous. Of course, some time has passed since the Florida court first received the Parties' post-trial briefing. However, before the Florida court is a complicated, mixed question of fact and law, with multiple choice-of-law, jurisdictional, and other legal questions also having been briefed. The Parties spent hundreds of thousands of dollars to submit those issues to a court already familiar both with the various parties and also with the sprawling bankruptcy proceeding that spawned the present dispute. Through that lens, the ***only*** scenario in which it makes sense to intercede and "start over" in a different court is in the face of some indication that the Florida court has utterly neglected its duty and is simply not going to rule. Of course, there is no evidence of that, nor is the mere passage of six months a basis to conclude that the Florida court is abdicating its responsibilities.

Notably absent from Plaintiffs' complaint about the passage of time is any allegation that a further stay will cause the Plaintiffs some meaningful prejudice that outweighs the obvious

benefits of a stay (which is the relevant question[2]). Other than an expressed desire to entangle Defendants in "other battles in this war," "continue the war on our own terms," "do things in the future to be a thorn in [Defendants'] sides," and "ruin and haunt [Defendants'] families for generations," Plaintiffs have not identified a single reason why it is important to immediately commence the re-litigation of matters already litigated. *See* Docket # 60-7; Docket # 60-5 at 19-23. Whatever effort and money is spent by the Parties in the next few months, and whatever time and attention the Court devotes to this case, will very likely be rendered moot by the Florida judgment that everyone acknowledges will eventually be issued. In such circumstances, and particularly right now, any effort to move this case forward is an indefensible waste of money and judicial resources.

      **B.**      **The Court can quickly reject the assertion that Plaintiffs' "alternative fraud" claim will somehow allow their entire case to circumvent an adverse Florida ruling.**

In their opposition memo, Plaintiffs once again assert that they have a special "alternative fraud" claim that will allow their entire 100-page lawsuit, and all nine causes of action it contains, to survive any adverse ruling from the Florida court. Notably, Plaintiffs' entire "alternative fraud" theory is crammed into the following lone allegation that Plaintiffs inserted into their most recent complaint:

> If it is determined that plaintiffs were nominees for Sigmund Solares and Michael Gardner respectively, then plaintiffs were defrauded by individual defendants, Faia and Decossas who maintained to plaintiffs at all times that they were to be the owners of DNC, DOM and DA.

---

[2] *See Cortez v. Lamorak Ins. Co.*, No. CV 20-2389, 2021 WL 2018073, at *4 (E.D. La. May 20, 2021) ("The U.S. Supreme Court's decision in *Landis* governs the Court's analysis in terms of the factors it must consider in deciding whether to grant a discretionary stay. Under *Landis*, the Court 'must weigh competing interests and maintain an even balance' when considering whether to grant a stay. Courts consider the following factors in applying *Landis*: '(1) any hardship imposed on the moving party by proceeding with the action, (2) any prejudice to the non-moving party if the stay is granted, and (3) the interests of judicial economy.'") (citations omitted).

Page 3

Docket # 55 (Second Amended Complaint, ¶ 617). In other words, Plaintiffs assert that, even if Plaintiffs suffered no damages because they did not own the options at issue, Defendants are still liable for "everything" because it was Defendants who made Plaintiffs believe that they *did* own the options.

When analyzed in even the most basic manner, Plaintiffs' "alternative fraud" argument utterly collapses. As an initial matter, among the issues that the Florida court is *explicitly* considering is whether the alleged option rights were granted to anyone at all, whether as nominees or otherwise.[3] The Florida court is also being asked to find that, in the event that any option rights were granted to Plaintiffs as nominees, that (a) Plaintiffs did not even know about the options until recently,[4] and (b) Plaintiffs never actually believed they were anything but nominees.[5] Significantly, if the Florida court rules against Plaintiffs on any of these issues—*i.e.*, finds that no options were ever executed, or that Plaintiffs were not the named option-holders, or that Plaintiffs were unaware of any options, or that Plaintiffs are knowingly acting as nominees—then Plaintiffs necessarily were not "innocent nominees" and will not be able to pursue their "alternative fraud" theory anywhere.

---

[3] *See, e.g.*, Florida Litigation, Docket # 192 (Agreed Bifurcation Order) at 3 ("Necessarily implicit in the Court's Trial of the Nominee Issue is a determination by the Court of whether any rights or interests were granted to Ms. Cahill or Ms. Gardner (or her Estate) at all.").

[4] *See, e.g.*, Florida Litigation, Docket # 439 (Defendants' Proposed Finding of Fact) at 52 ("Cahill's lack of familiarity with the Alleged DNC/DOM Option in 2020 is in in line with the statements from 2011 that the Alleged DNC/DOM Option was to be kept secret from Cahill. The Court does not find Cahill's testimony as to her awareness of the options prior to Solares' prompting credible, as Cahill had no recollection of the Alleged DNC/DOM Options she now claims to have routinely discussed with her brother as late as June of 2020.").

[5] *See, e.g.*, Florida Litigation, Docket # 439 (Defendants' Proposed Finding of Fact) at 42 ("The Court did not find Cahill's testimony to the contrary on the issue of control to be credible. Cahill, despite being aware of the Solares Lawsuit, did not take any action with regard to the Alleged DNC/DOM Options or Alleged Domain Apps Options until prompted to by Solares. Moreover, when directed by her brother to not tell anyone of her knowledge of the pending litigation, Cahill expressly acknowledged that she would follow her brother's direction. Cahill's conduct is entirely inconsistent with that of someone who believed they had independent rights to protect. If Cahill truly had independent rights, she would have acted long before the prompting from Solares.").

Even if Florida court's ruling does not completely bar Plaintiffs' claims, the Plaintiffs do not deny that an adverse ruling in Florida will dramatically affect which part of their amended complaint is relevant. As even the Plaintiffs seemingly concede, if the Florida court finds that Plaintiffs are not nominees, then the operative part of Plaintiffs' complaint is set forth in Paragraphs 1-616. But if the Florida court rules that Plaintiffs *are* nominees, then Paragraph 617 becomes the relevant lawsuit. Clearly, with so much in this matter resting on what the Florida court says, it simply does not make sense to commence litigation of any "contingent" claims.

To the extent the Court is still questioning whether Plaintiffs' "alternative fraud" theory does serve as a way to sidestep any adverse ruling in Florida, Defendants urge the Court to quickly dissect Plaintiffs' "theory." Plaintiffs suggest that "fraud" is some type of tool that allows Plaintiffs to get past the fact that they have no damages and that nothing was taken from them. According to Plaintiffs, it is irrelevant that Plaintiffs never owned any of the assets at issue; rather, Plaintiffs can still purportedly assert causes of action as owners because the Defendants made Plaintiffs erroneously *believe* they were owners.

Of course, Plaintiffs' position is not logical and it is certainly not supported by any law, holding, case, statute, treatise, article, or argument ever published anywhere. Convincing a person that he or she owns an asset does not make that person the owner of the asset or give that person standing to sue as the owner of that asset. Fraud is not a substitute for a lack of standing or damages, but a distinct cause of action that allows a plaintiff to recover for *damages suffered* as a *result* of *relying* on an intentional misrepresentation.[6] So, Plaintiffs are free to allege an "alternative fraud"

---

[6] *See Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.,* 527 F.3d 412, 418 (5th Cir. 2008) ("The elements of a claim for intentional misrepresentation in Louisiana are: (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury.").

claim if they wish, but they must also allege reliance and that they incurred some compensable monetary loss (of assets they *actually* owned) due to their erroneous "belief" that they owned the option rights at issue.[7]

Despite filing a 96-page, 620-paragraph complaint, which itself attaches a separate 16-page "statement of fraud," Plaintiffs have somehow failed to allege with any particularity any misrepresentations supporting their "alternative theory." *See* Docket # 55, 55-2. Nor have Plaintiffs alleged at even the most cursory level how they in any way incurred any loss or expenses as a consequence of erroneously believing that they owned three companies that they apparently knew nothing about. Notably, this pleading deficiency was explained to Plaintiffs before they ever amended their complaint to include the "alternative fraud" paragraph. *See* Docket # 51-2 (Def's 6.27.2023 Brief) ("Such a claim completely reshapes the nature of the case, as Plaintiffs—who paid nothing for their alleged options and have never expended or incurred any expenses based upon the assumption that they owned the Three Companies—cannot prove a fraud claim [or] any reliance damages."). Nevertheless, Plaintiffs elected not to amend their complaint to properly plead the fraud claim that is supposedly the lynchpin of their case.

To be clear, this Court need not dismiss Plaintiffs' "alternative fraud" claim or rule that Plaintiffs have had adequate time to add the requisite specificity or supporting allegations. Defendants will seek the dismissal of the "alternative fraud" claim, if necessary, at the appropriate time. Right now, Defendants are suggesting only that, to the extent a viable overarching

---

[7] *See, e.g., Thomas v. Chambers*, No. CV 18-4373, 2019 WL 485781, at *3 (E.D. La. Feb. 7, 2019) ("[F]or fraud or deceit to have caused plaintiff's damage, he must at least be able to say that had he known the truth, he would not have acted as he did to his detriment. Whether this element is labeled reliance, inducement, or causation, it is an element of a plaintiff's case for fraud. . . . [Louisiana courts] recognize that a party asserting fraud is required to allege that it was unaware that the opposing party's representation was false, and that the misrepresentation caused it to act differently than it would have had it known the truth. Defendants have not made this assertion here.").

Page 6

"alternative" claim could justify lifting the stay, Plaintiffs' new Paragraph 617 does not remotely articulate such a claim.

> C. **Defendants submitted the sample documents with their motion to show the reason for delayed resolution in Florida, not to solicit any ruling on the "nominee issue."**

Plaintiffs suggest in their opposition that Defendants have improperly submitted evidence to this Court relating to the "nominee issue." To be clear, Defendants have not submitted that evidence to solicit any type of substantive determination or comment from this Court. Rather, the referenced evidence was provided solely to demonstrate that a significant reason for continued delay in Florida is the recent disclosure of highly-relevant documents by Sigmund Solares and Michael Gardner. The evidence is clearly significant, should never have been withheld, and is now before the Florida court in the form of a motion to supplement the record that will be heard on October 2. Florida Litigation, Docket # 489; Exhibit 1. In turn, the new evidence to be admitted, though not voluminous, may then need to be incorporated into the Florida court's ruling. As the Plaintiffs are suggesting that the delay in the Florida proceeding's resolution is unreasonable and inexplicable, it is certainly relevant that it is Plaintiffs and their cohorts who have contributed to the delay.[8]

Here it bears commenting on Plaintiffs' attempts to distance themselves from the recent evidence and the actions of Sigmund Solares and Michael Gardner. Plaintiff Vivian Cahill may

---

[8] In response to Michael Gardner and Sigmund Solares' disclosure of extraordinarily-relevant communications on September 1 and September 15, Defendants were forced to file a "Motion to Re-Open Evidence for a Narrow Limited Purpose" on September 7, followed by a "Supplement to Motion to Re-Open Evidence" on September 19. *See* Exhibit 1 (Florida Litigation Motion); Exhibit 2 (Florida Litigation Supplement). Of course, the new evidence shatters the narrative that Plaintiffs are not serving as the pawns of Solares and Michael Gardner. Even more interestingly, though, the new evidence confirms that, at the same time Sigmund Solares and Michael Gardner were advising the Bankruptcy Court that they were the owners of the disputed options and that no one else had any relevant rights, they were already plotting to save "the RICO complaint" for "the next battle." *See* Exhibit 2 at p.5. Of course, the referenced RICO complaint can be found at Docket # 2, the referenced battle is this litigation, and this Court is the chosen battlefield.

not have personally withheld the recently disclosed evidence, but that evidence nevertheless directly undermines *her* sworn testimony that she is not pursuing enforcement of the options at her brother's behest.[9] More relevantly, though, this Court need not pretend that the other Plaintiff in this case (Michael Gardner), albeit in a different capacity, is not the same person that is causing delay in Florida and telling a factually-irreconcilable story.[10] Nor is it as if the supposed party-in-interest (Sandra Gardner) was in a different position at the relevant time and thus insulated from the acts of Michael Gardner. Quite the opposite, there is no evidence, anywhere, that Sandra Gardner ever signed or knew of the purported options in her name, with the first suggestion of her having any rights appearing in October 2020. Notably, it was then—after Sandra Gardner's death—that Michael Gardner began explicitly plotting how he could claim the disputed assets for himself in a settlement while simultaneously using his mother's estate to sue the Defendants again for the same assets, and at the same time representing to the Bankruptcy Court that his receipt of the disputed assets would "not prejudice any party in interest, nor will it cause any harm to any third parties." *See* Doc. # 60-5 (pre-Settlement communications) at 15-16 ("I like the estate thing – I have yet to even contact my moms attorney to get things going. . . . but that would have to eventually get to [my sister] – so I could divide estate, and [she] would get that asset."); Florida Litigation, Docket # 1 at ¶ 37.

Of course, it is often not appropriate to hold a decedent's estate responsible for the conduct of the estate's administrator. In this case, however, not only is the relevant estate part of the

---

[9] *See* Doc. # 60-5 at 25-26 (Nov. 25, 2020, communications) ("**Gardner:** Then initiating fresh lawsuits against them personally for our sisters/heirs could also be satisfying. **Solares:** Yep.").

[10] *See, e.g.*, Doc. # 53-3 (2020 complaint filed by Gardner) at ¶ 42 ("[Michael] Gardner was told that Faia held documents, including option agreements, which protected [Michael] Gardner's interests in the Companies and assets."); at ¶ 82 ("[W]ith [Michael] Gardner thinking that the New Companies were not profitable, he had no incentive to exercise his options.").

administrator's written plan to further a fraudulent scheme on the administrator's own behalf, but the scheme was established before he was ever appointed as administrator. In such circumstances, this Court is under no obligation to blind itself to the true purpose, motivation, and person behind the "estate claims" at issue.

> **D. Defendants should not be forced to determine their defense strategy or to otherwise commence any proceedings that might be affected by the outcome of the Florida proceeding.**

In a final, backstop argument, Plaintiffs contend that, if nothing else, Defendants should be required to immediately brief and argue any venue objection that they may have. In particular, Plaintiffs assert, if Defendants are ever going to seek a transfer of the case to Florida, they should be made to do so now.

Here again, Plaintiffs are trying to force the furtherance of matters that are contingent upon the outcome of the impending Florida ruling. For instance, one of the issues that Plaintiffs have presented to the Florida court is whether a forum selection clause requires resolution of various issues in Louisiana. Florida Litigation, Docket # 438, p. 22. Also pending before the Florida court is Plaintiffs' overriding objection to that court's jurisdiction. *See* Florida Litigation, Docket # 438, p. 3. If the Florida court resolves either of these issues in Plaintiffs' favor, then any motion to transfer venue would presumably be improper.

Moreover, the Florida court could conceivably rule that no options existed, or that only certain options existed, or that only one Plaintiff was a nominee, or that only one Plaintiff was complicit in being designated as a nominee. Depending on the particular findings and scope of the Florida ruling, it may or may not be sensible to attempt to consolidate all proceedings in Florida. Moreover, if Plaintiffs' claims are whittled down substantially, one or more Defendants may also be able to object to personal jurisdiction. Conversely, in some scenarios, Defendants might prefer

to instead oppose what remains of Plaintiffs' case substantively and in a forum where jurisdiction is not disputed—such as by seeking the dismissal of Plaintiffs' "alternative fraud" claim *here* under Rule 9(b) or 12(b)(6), or by contesting Plaintiffs' standing to assert obviously-corporate claims, or by challenging the adequacy of Plaintiffs' RICO allegations, or by demanding that Sigmund Solares and Michael Gardner be joined as parties under Rule 19.

It is inefficient, pointless, and improper to commence discovery and the development of claims that will be impacted by the Florida court's ruling. For the same reasons, it is likewise inefficient, pointless, and improper to force Defendants to commit to a defense strategy that, like everything else in this matter, will be impacted by the Florida court's ruling. This Court should accordingly unconditionally grant the further stay as prayed for.

―――  ―  ―――

WHEREFORE, Defendants (Gregory G. Faia, Vernon H. Decossas III, Faia & Associates, LLC, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC) reiterate their request that the Court:

(a) GRANT their Motion to Extend Stay, staying the advancement of this matter until at least December 1, 2023, or further Court order;

(b) ORDER that Defendants be granted until at least December 1, 2023, to file responsive pleadings and/or any applicable Rule-12 motions; and

(c) ORDER that no written discovery shall be served in this matter, nor shall any discovery otherwise be conducted, until at least December 1, 2023.

Respectfully submitted,

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P

By: _____*Ryan K. French*_____
　Robert W. Barton, Bar # 22936
　　Bob.barton@taylorporter.com
　John S. Campbell, III, Bar # 23674
　　Johnstone.campbell@taylorporter.com
　Ryan K. French, Bar # 34555
　　ryan.french@taylorporter.com
　450 Laurel Street, 8th Floor (70801)
　P. O. Box 2471
　Baton Rouge, LA 70821-2471
　Phone: (225) 381-0262

　*Attorneys for Vernon H. Decossas III, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC*


JONES WALKER L.L.P

　Michael W. Magner, Bar # 1206
　　mmagner@joneswalker.com
　Andrew R. Lee, Bar # 21196
　　alee@joneswalker.com
　Peter J. Kee, Bar # 34860
　　pkee@joneswalker.com
　201 St. Charles Ave. Suite 5100
　New Orleans, LA 70170
　Phone: (504) 589-8316

　*Attorneys for Gregory G. Faia, Faia & Associates, LLC, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC*


FRILOT, LLC

　David S. Daly, Bar # 20774
　　ddaly@frilot.com
　1100 Poydras St. Suite 3700
　New Orleans, LA 70163
　Phone: (504) 599-8139

　*Attorneys for Gregory G. Faia and Faia & Associates, LLC*

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this **21st** day of **September**, 2023, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and notice of this filing was accordingly sent to all counsel of record through the Court's electronic filing system.

                                /s/   *Ryan K. French*  
                                  Ryan K. French