### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**VIVIAN S. CAHILL AND THE ESTATE
OF SANDRA F. GARDNER, BY ITS PERSONAL
REPRESENTATIVE, MICHAEL H. GARDNER,**

       *Plaintiffs,*

                                    **Case No. 2:22-cv-00543-SM-DPC**

**v.**

**GREGORY FAIA, VERNON H. DECOSSAS, III,
FAIA & ASSOCIATES, LLC, ADS SQUARED LLC,
VISUAL AD GROUP, INC. AND DSE LEASING, LLC,**

       *Defendants*

_____/

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
### SECOND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL
### PROCEDURE 12(B)(1) AND 12(B)(6)

      **NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Vivian S. Cahill

("Ms. Cahill") and the Estate of Sandra F. Gardner, through its personal representative, Michael

H. Gardner, ("the Estate") (collectively "Plaintiffs"), who respectfully submit this opposition to

Defendants' Second Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and

12(b)(6) (R. Doc. 78).

### INTRODUCTION

      Plaintiffs have brought this current matter involving claims of *violations of the Racketeer-*

*Influenced and Corrupt Organizations Act (RICO)* under 18 U.S.C. § 1961, *et seq.*, as well as

claims for violations of *Louisiana's* Unfair Trade Practices Act (La.R.S. §51:1405), and fraud

against all the Defendants.[1]  Plaintiffs further bring claims for Breach of Fiduciary Duty, Breach

---

[1] See R.Doc. 55.

of Contract, and Specific Performance *pursuant to Louisiana law*, against certain Defendants.[2]
Additionally, Plaintiffs have requested, and are entitled to, a *trial by jury* in connection with their
claims.  Defendants have implemented various legal maneuvers in an attempt to avoid adjudication
of their actions in a Louisiana court by a Louisiana jury.  Their latest attempt, the current *Second
Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6)*, is not well
founded and should be denied by this Court, and Plaintiffs should be allowed to have their day in
court and have Defendants answer for their actions.

## FACTUAL BACKGROUND

This matter involves the attempted enforcement of six (6) stock option agreements related
to Dom Holdings, Inc., DNC Holdings, Inc., and Domain Apps, LLC (the "Three Companies"):

| | | |
|---|---|---|
| 1 | 2011 Stock Option Agreement in DNC Holdings, Inc. DOM Holdings, Inc., Vodun Technologies, Inc., and VMS Enterprises, in favor of Vivian Cahill | "2011 Cahill Stock Option" |
| 2 | 2011 Stock Option Agreement in DNC Holdings, Inc. DOM Holdings, Inc., Vodun Technologies, Inc., and VMS Enterprises, in favor of Sandra Gardner | "2011 Gardner Stock Option" |
| 3 | 2012 Stock Option Agreement in Domain Apps, LLC granted by Gregory Faia in favor of Vivian Solares or Sigmund Solares[3] | "2012 Cahill/Solares-Faia Stock Option" |
| 4 | 2012 Stock Option Agreement in Domain Apps, LLC granted by Vernon Decossas, III. in favor of Vivian Solares or Sigmund Solares[4] | "2012 Cahill/Solares-Decossas Stock Option" |
| 5 | 2012 Stock Option Agreement in Domain Apps, LLC granted by Gregory Faia in favor of Sandra Gardner | "2012 Gardner-Faia Stock Option" |
| 6 | 2012 Stock Option Agreement in Domain Apps, LLC granted by Vernon Decossas, III. in favor of Sandra Gardner | "2012 Gardner-Decossas Stock Option" |

---

[2] *Id.*; These claims were brought against Gregory Faia and Vernon Decossas, III.  Plaintiffs also brought claims for
Preliminary Injunction, Permanent Injunction, and Declaratory Relief against all the Defendants.
[3] See draft of 2012 Cahill/Solares-Fai Stock Option, attached hereto as Exhibit "2."
[4] See draft of 2012 Cahill/Solares-Decossas Stock Option, attached hereto as Exhibit "1."

These "Option Agreements" were entered into by Defendants, Gregory Faia ("Faia") and Vernon Decossas, III ("Decossas") respectively, and Plaintiffs, Vivian Cahill and Sandra Gardner respectively, in 2011 and 2012.[5]  The Option Agreements are for 20 years (DNC and DOM) and 30 years (DA),  and provided Ms. Cahill and Ms. Gardner the ability to gain ownership and control over the Three Companies from Defendants, Faia and Decossas.  The Three Companies were created because Defendants, Faia and Decossas, fraudulently convinced Sigmund Solares (Ms. Cahill's brother) and Michael Gardner (Ms. Gardner's son) (collectively "Solares and Gardner") that the assets and business operations of Solares and Gardner's extensive portfolio of companies organized under the umbrella of Solares and Gardner's company, The Producers, Inc., should be transferred and/or operated by the Three Companies, which were  to be nominally owned by Faia and Decossas.  In connection with the execution of this transfer, various protection documents were created and executed.  Some were in favor of Solares and Gardner personally.  Others, which are the Option Agreements at issue in this litigation, were in favor of Ms. Cahill and/or Ms. Gardner personally.

While Defendants initially took the position that none of these Option Agreements were ever executed, and made intentional misrepresentations to that effect in the bankruptcy court,  they were forced to admit that at least two of them, (3) and (4) above, *were* signed by Decossas and Faia respectively during their testimony at the trial before the Florida bankruptcy court on the issues regarding (a) the Options Agreements' validity and (b) whether the Plaintiffs were nominees for Solares and Gardner under the Options Agreements.[6]

---

[5] Sandra Gardner has since passed away.  Therefore, her estate is a Plaintiff herein.
[6]  Plaintiffs dispute numerous facts presented by Defendants and reserve the right to address inaccuracies at a later stage.

As to (4) above, Decossas directly admitted that he signed the Option Agreement in the following exchange that took place during the Nominee Trial in Florida:

> THE COURT: Okay. Before you do Recross (sic), let me ask a question. On this list that we were just looking at, which is within Document 77, a list of what I'll call closing documents for the -- that was the third phase?
>
> THE WITNESS: That's the Domain Apps.
>
> THE COURT: Okay. Where do you -- where do you see that Sigmund Solares had not signed something or he still needed to –
>
> THE WITNESS: So in the last column, he's the last name, going down on that column.
>
> THE COURT: Okay. So this was the option right of first refusal to purchase stock in Domain Apps, okay.
>
> MR. BURNS: From Mr. Decossas.
>
> THE COURT: Right. So Mr. Decossas had already signed it.
>
> THE WITNESS: Yes, ma'am, it appears that way.[7]
>
> …
>
> THE COURT: And for anything that you had to sign, where did you sign them?
>
> THE WITNESS: I signed it here, (Tampa, Florida) after it came back (from the Caymans), at my house.
>
> THE COURT: Did you have to sign -- let's see, you had already signed the option and right of first refusal to purchase stock in Domain Apps.
>
> THE WITNESS: That's correct. For the third sale, yes.[8]

Thus, Decossas admitted that *he* executed (4).  As to (3) above, Faia's testimony was that he doesn't remember if it was signed, but that he would defer to Decossas regarding same. Decossas testified that *his* "corporate documents list," which was introduced into evidence *by* Decossas, was true and accurate.[9]  Decossas' "corporate documents list" indicates that (4) *was, in*

---

[7] See Exhibit "3," attached hereto (Excerpt from Trial Transcript Day 2 at Pg. 213, Ln. 24 – Pg. 214, Ln. 15).
[8] See Exhibit "4," attached hereto (Trial Transcript Day 2 at Pg. 215, Ln. 1 – Ln. 9).
[9] See Exhibit "5," attached hereto (Ex. 77 in the Nominee Trial).

*fact, executed.*  Neither Decossas nor Faia disputed the accuracy of same, which results in a finding of fact and/or admission by Defendants that at least two of the Option Agreements, (3) - 2012 Cahill/Solares-Faia Stock Option and (4) - 2012 Cahill/Solares-Decossas Stock Option, *were* signed by Decossas and Faia respectively.

*All* of the Option Agreements, *which were drafted by Defendants*, contained choice of law provisions and forum selections clauses **designating *Louisiana* as the proper jurisdiction**/venue for resolution of the contracts and *Louisiana law* as the proper law to be applied to any such resolution.  As an example, both (3) and (4) above, which Decossas and Faia *admit* to signing, contained the following identical paragraph:

> **11.    SELLER and PURCHASER consent to the jurisdiction of the State of Louisiana, for resolution of any dispute regarding this agreement or the transfer intended herein and the enforcement of this contract under the laws of the State of Louisiana.**[10]

In 2017, litigation ensued that ultimately included Sigmund Solares, Michael Gardner, Gregory Faia, and Vernon Decossas.  The subject matter of that litigation included Faia and Decossas' fraudulent actions in connection with the above described transfer and the protection documents specific to Solares and Gardner.  Through legal posturing of Faia and Decossas, that litigation morphed from litigation in Civil District Court for the Parish of Orleans; to litigation in the 24th Judicial District Court for the Parish of Jefferson; to litigation in the United States Bankruptcy Court for the Eastern District of Louisiana; to litigation in the United States Bankruptcy Court for the Middle District of Florida (Tampa Division), involving a Chapter 7 involuntary bankruptcy of The Producers, Inc., not the Three Companies.  That litigation, which ultimately was <u>solely</u> between Sigmund Solares and Michael Gardner on the one hand and Gregory

---

[10] *Supra* notes 3 and 4.

Faia and Vernon Decossas, III. and their respective companies on the other, was settled in the bankruptcy court in Florida. The Plaintiffs herein *were neither* parties to that litigation or creditors in the bankruptcy case of The Producers, Inc., nor were they parties to the settlement.

Thereafter, on July 23, 2021, Plaintiffs herein sent notice to Defendants, Decossas and Faia, of their intent to exercise the Option Agreements.[11] Faia and Decossas were advised that, pursuant to the Option Agreements, they had 30 days to convey ownership of the Three Companies to Plaintiffs.[12] In response, *as admitted to by Defendants in their brief*, less than a month later:

> "[o]n August 13, 2021, Faia and Decossas filed a motion to reopen the … bankruptcy case … [and] [o]n September 24, 2021, … initiated a related adversary proceeding against Solares, Gardner, Cahill, and Gardner-as-Executor, seeking a declaration that Cahill and Gardner-as-Executor held no Option rights or other rights in the Three Companies, and/or that any rights they did hold were 'as agents and proxies for' Solares and Gardner. … Faia and Decossas have alleged in great detail how Cahill and Gardner-as-Executor are liable in various ways for their participation in Solares and Gardner's fraudulent Option-enforcement scheme. See Exhibit 11."[13]

Exhibit 11, which is R.Doc. 75-12, reveals that two substantive counts were pled against Plaintiffs herein in the adversary proceeding in the Florida bankruptcy:

> (1) a claim for declaratory relief that Plaintiffs *"merely held interests in the Alleged Options, if any, as agents and proxies for S. Solares and M. Gardner, and that S. Solares and M. Gardner had full authority to, and did in fact, settle and release any claims premised on the Alleged Options in the Settlement Agreement such that the Alleged Options are no longer valid and enforceable, to the extent such Alleged Options even exist;"*[14] and

> (2) a claim for *"aiding and abetting [alleged] fraud"* of Sigmund Solares and Michael Gardner *"by sending the Letters and concealing the falsity of S. Solares's, M. Gardner's, and Debtors' assertions of intention to fully settle and release all claims in the Solares/Gardner Adversary Complaint, Bankruptcy Case and Trustee Adversary."*[15]

---

[11] See R.Doc. 75-9.

[12] *Id.*

[13] R.Doc. 74-2 @ Pp. 13 – 14.

[14] R.Doc. 75-12 @ Pg. 37 of 57 (Prayer between paragraphs 93 – 94).

[15] *Id.* @ Pg. 47 of 57. (Paragraph 137 and Prayer after paragraph 139). Defendants also brought a claim for injunctive relief.

Plaintiffs herein subsequently filed this action alleging that Defendants' actions with regard to the Three Companies are *violations of the Racketeer-Influenced and Corrupt Organizations Act (RICO)* under 18 U.S.C. § 1961, *et seq.*, as well as violations of *Louisiana's* Unfair Trade Practices Act (La.R.S. §51:1405), *Louisiana's* fraud laws, and a Breach of Fiduciary Duty, Breach of Contract, and Specific Performance.  Specifically, Plaintiffs allege that Defendants never had any intention to honor the Option Agreements and, since the Florida Bankruptcy Court incorrectly decided that it would rule on whether Plaintiffs were nominees, in the alternative Plaintiff's pled that to the extent Plaintiffs were determined to be nominees, they never agreed to same and were thus defrauded by Defendants.

As the Florida Bankruptcy Court has now indicated that it will rule that Plaintiffs were nominees, Defendants' Second Motion to Dismiss appears to be aimed at the alternative theory.[16] All of Defendants' arguments are fatally defective and should be denied by this Court.  This is particularly true given that, even the Florida Bankruptcy Court acknowledged that its ruling is appealable and indicated that it will certify the judgment as a final, appealable judgment.

## ARGUMENT

Defendants' Second Motion to Dismiss is filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The law and the jurisprudence interpretive of same are very clear on when it is appropriate to grant such motions.  As this Court acknowledged, a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[17] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter

---

[16] No judgment has been reduced to writing yet.  The Florida Bankruptcy Court read a draft of written reasons into the record.  The written reasons are expected to be finalized and signed by the time of the submission date on this motion, but it is likely that an actual written judgment on the issue will not be finalized or signed by that date.

[17] See *Blanchard v. Tulane Univ.*, 22-260 (EDLA 10/21/22), 636 F.Supp.3d  642 (Morgan).

jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[18] Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[19]  "To survive a motion to dismiss, a complaint [merely] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21]  A plaintiff need not make out a *prima facie* case at the motion to dismiss phase, but instead must plead sufficient facts on the ultimate elements to make the case plausible.

**(A)    THIS COURT HAS JURISDICTION.**

Defendants don't appear to `explain, at all, the basis for its Rule 12(b)(1) challenge to this Court's jurisdiction.  Rather, Defendants' brief seems to focus all of their arguments on their Rule 12(b)(6) challenge to Plaintiffs' complaint wherein they assert that Plaintiffs have not stated a claim for relief, which "blurs jurisdiction with the merits."  *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016) ("So long as a complaint is drafted to seek recovery directly under the Constitution or laws of the United States, a failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.") (omitting quotations).

---

[18] See *Gisclair v. Great Am. Assur. Co.*, 22-3556 (EDLA 02/03/23), 2023 U.S. Dist. LEXIS 18206 (Morgan).
[19] See *Blanchard v. Tulane Univ.*, 22-260 (EDLA 10/21/22), 636 F.Supp.3d 642 (Morgan).
[20] *Id.* at 650 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).
[21] *Id.*

Plaintiffs will address Defendants' Rule 12(b)(6) challenge momentarily.  For purposes of Defendants' 12(b)(1) challenge to this Court's jurisdiction, it is clear that this Court has subject matter jurisdiction over this case.

The United States Code, via 28 U.S.C. § 1331 establishes that "[t]he district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   In this matter, Plaintiffs are bringing claims pursuant to the *United States Racketeer-Influenced and Corrupt Organizations Act (RICO)* at 18 U.S.C. § 1961, *et seq.*  Thus, this matter is clearly being brought under the laws of the United States, which gives this Court original jurisdiction.

 Furthermore, this Court has subject-matter jurisdiction over this controversy because Plaintiffs' have constitutional standing under the Constitution to maintain this action. "As a prerequisite to jurisdiction, the U.S. Constitution requires, at a minimum, that a case present an actual "case or controversy" as defined by Article III." *Halstead Bead, Inc. v. Lewis*, 604 F. Supp. 3d 342, 349 (E.D. La. 2022), *aff'd sub nom. Halstead Bead, Inc. v. Richards*, No. 22-30373, 2023 WL 4399238 (5th Cir. July 7, 2023). "Standing is one aspect of this constitutional requirement, so a lack of standing deprives the court of subject matter jurisdiction." *Id.* at 349 (citations omitted). "The party seeking to invoke federal jurisdiction has the burden of establishing standing." *Id.* at 349-50 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992)).

Standing under Article III is a different analysis from statutory standing under RICO. Courts must first decide the constitutional question of standing before turning to the issue of whether a plaintiff has standing under RICO. *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 339 (5th Cir. 2021) (citations omitted) ("Although statutory standing involves an inquiry into alleged injury,

it is not synonymous with Article III standing. Instead, a motion to dismiss for lack of statutory standing is analyzed under Rule 12(b)(6), not Rule 12(b)(1)).” “[T]he question of statutory standing [under RICO] is to be resolved under Rule 12(b)(6), once Article III standing has been established.” *Id.* at 339 (citations omitted).

To establish constitutional standing, a plaintiff must have: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61. The “injury-in fact” requirement means that the alleged harm must be over “an invasion of a legally protected interest which is (a) concrete and particularized; and (b) “actual or imminent, not conjectural or hypothetical;” the causal connection requirement means that the injury must not be the result of “the independent action of some third party not before the court;” and the redressability requirement means that it is “likely,” as opposed to merely “speculative,” that the injury will be “redressed by a favorable decision.” *Tenth St. Residential Ass'n v. City of Dallas, Texas*, 968 F.3d 492, 499 (5th Cir. 2020) (citations omitted).

The Complaint satisfies these three elements. First, Plaintiffs have suffered a cognizable injury in fact. The Complaint alleges that in 2011 and 2012, stock option agreements were prepared by Defendant and Louisiana attorney Faia that gave Plaintiffs option rights to obtain full ownership and control over the Three Companies that were being managed and operated by Faia and Defendant Decossas. In each of the option contracts, Faia and Decossas promised Plaintiffs not to alienate any asset that belonged to the Three Companies. The Complaint maintains that as their fiduciary agent, Faia promised to safeguard these option agreements until such time that the option rights would be exercised. The Complaint alleges that Faia and Decossas have intentionally and maliciously lost and/or destroyed Plaintiffs’ option agreements when it was learned that Faia and

Decossas had secretly created new RICO enterprises, and together with pre-existing enterprises, engaged in a lengthy and ongoing pattern of racketeering activity that has caused and continues to cause substantial injury to Plaintiffs.

The Complaint successfully charges Faia, Decossas, and their RICO enterprises, as being directly responsible and liable for the injuries sustained by Plaintiffs. Defendants Faia and Decossas formed a fiduciary relationship with Plaintiffs as their attorney and accountant respectively. Through various illicit acts, including but not limited to 1) breach of various fiduciary duties owed to Plaintiffs, 2) breach of contract, 3) theft and fraud, and 4) racketeering activity, Plaintiffs' injuries are traceable to the conduct of Faia and Decossas and their RICO enterprises.

Third, the Complaint successfully pleads judicial redress. Plaintiffs have meticulously set forth Defendants' liability under 18 U.S.C. § 1962(a)-(d), as well as liability arising under Louisiana law. Each count in the Complaint is within the applicable statute of limitations/prescription period, such that a jury can award damages once Plaintiffs put forth their case-in-chief. The Complaint also invokes the power of this Court to fashion equitable remedies available to successful plaintiffs under 18 U.S.C. § 1964(a), as well as awarding Plaintiffs treble damages and attorneys' fees under RICO and Louisiana law.

**(B)** **PLAINTIFFS HAVE STANDING TO ASSERT THEIR ALTERNATIVE THEORY.**

Defendants' first purported attack on Plaintiffs' alternative theory pursuant to Rule 12(b)(6) is that it is "facially-absurd." This demeaning attitude towards Plaintiffs actually provides further support for Plaintiffs' alternative theory. Defendants completely ignore and disregard the facts actually pled by Plaintiffs, and essentially assert that a ruling that Plaintiffs are nominees, in and of itself, would disqualify Plaintiffs' claims. They contend that such a ruling would mean that

Plaintiffs are attempting to advance the claim of another.  This argument not only demonstrates the hubris of Defendants, but it is also factually and legally inaccurate.

While albeit an oversimplification of Plaintiffs' claims, same can be demonstrated, in part, by a review of the *actual facts pled* in a few paragraphs in Plaintiffs' Second Amended Complaint. Therein, Plaintiffs pled as follows:

> 17.     Also, in 2011 and 2012, Faia and employees of his law practice, F&A, drafted several estate planning documents (the Options) that unequivocally established Vivian and Sandra's right to gain ownership and control of the Three Companies upon demand. These agreements were duly executed. Faia insisted, and it was agreed, that he maintain custody of the executed protection documents, including the Options.

> 18.     The Options gave Vivian and Sandra the right to acquire the equity interests and become the owners of the Three Companies. These agreements also prohibited Faia and Decossas from alienating or diminishing in value any asset belonging to the Three Companies.

> 19.     Faia assured Solares, Gardner, Vivian, and Sandra that the original Options would be kept safe and secure in a fire-proof safe located at his law office.

> 20.     In the years following the creation of the Three Companies, Faia and Decossas engaged in a systemic campaign of fraud, deceit, and conversion, resulting in Faia and Decossas stealing tens of millions of dollars in cash, and tens of millions of dollars' worth of other assets from the Three Companies.

> 21.     Without any knowledge of Solares, Gardner, Vivian, or Sandra, Faia and Decossas formed and used several secretly created third-party business entities/enterprises to receive fraudulently transferred and converted property from the Three Companies for Faia and Decossas' pecuniary benefit, and for the financial benefit of their third-party business entities.

> …

> 27.     On July 23, 2021, Vivian and Michael H. Gardner "as Executor for" the Estate gave Faia and Decossas written notice of their exercise of the Options. After the Estate's Will was admitted to probate and the Probate Court appointed Michael H. Gardner as the Personal Representative of the Estate, on December 21, 2021, Vivian and the Estate, by its Personal Representative, gave written notice to Faia and Decossas of their exercise of the Options.  Faia and Decossas now deny or refuse to acknowledge the existence of the executed Options. The conduct of Faia and Decossas and their RICO Enterprises has proximately injured the Plaintiffs in their business and property.

…

617.   If it is determined that plaintiffs were nominees for Sigmund Solares and Michael Gardner respectively, then plaintiffs were defrauded by individual defendants, Faia and Decossas who maintained to plaintiffs at all times that they were to be the owners of DNC, DOM and DA.[22]

Thus, the facts that Plaintiffs alleged were that Defendants, Gregory Faia and Vernon Decossas, III., executed the Option Agreements and then refused to honor them.   A ruling that Plaintiffs were nominees of third parties, *without Plaintiffs' knowledge or consent at the time*, does not absolve Defendants of their liability for the actions pled.   If Defendants allegedly conspired with third-parties to fraudulently make Plaintiffs believe that the Options were theirs (Plaintiffs) when, in fact, they were not, then Defendants are liabile to Plaintiffs for such action.   And if Defendants participated in RICO activity in furtherance of and in connection with same, then Defendants have liability to Plaintiffs for such action under the RICO laws.   *That*, albeit in a severely oversimplified fashion, is Plaintiffs' alternative theory, and that is not a claim of another. That is 100% Plaintiffs' claims, and they certainly have standing to assert same in this court.

**(C)    PLAINTIFFS HAVE STANDING AND THE RIGHT TO PURSUE DAMAGE CLAIMS.**

Defendants next 12(b)(6) attack is an assertion that Plaintiffs don't have standing because the claims are purportedly actually claims of the corporation and not Plaintiffs themselves.   A review of the facts, as pled, reveal that this argument, once again, is not only factually inaccurate but also legally incorrect.   Specifically, a review of three of the paragraphs quoted above suffice to show Defendants' factual inaccuracy:

18.   The Options gave Vivian and Sandra the right to acquire the equity interests and become the owners of the Three Companies. These agreements also prohibited

---

[22] See R.Doc. 55.

Faia and Decossas from alienating or diminishing in value any asset belonging to the Three Companies.

…

20.    In the years following the creation of the Three Companies, Faia and Decossas engaged in a systemic campaign of fraud, deceit, and conversion, resulting in Faia and Decossas stealing tens of millions of dollars in cash, and tens of millions of dollars' worth of other assets from the Three Companies.

21.    Without any knowledge of Solares, Gardner, Vivian, or Sandra, Faia and Decossas formed and used several secretly created third-party business entities/enterprises to receive fraudulently transferred and converted property from the Three Companies for Faia and Decossas' pecuniary benefit, and for the financial benefit of their third-party business entities.

As pled, Defendants' agreement not to alienate or diminish in value any asset belonging to the Three Companies was not an agreement with the Three Companies, but rather *it was an agreement with Plaintiffs*.  This fact pattern, as pled, distinguishes this matter from all of the cases cited by Defendants in brief.  In this matter, there are written, stand-alone agreements between Defendants and *Plaintiffs* that Defendants, through their RICO activity, intentionally and purposefully violated.  *Thus*, Plaintiffs most certainly have standing and can pursue claims of violations of same.

Additionally, it should be noted that RICO standing doesn't necessitate a direct victim, but rather mandates a direct injury, in the form of a loss of business or property.  "RICO is to 'be liberally construed to effectuate its remedial purposes."[23] With respect to the "Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., civil standing is not limited to only the immediate victim of a defendant's RICO violation."[24] The case of *Creel v.*

---

[23] *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985).  RICO standing means "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496.

[24] *Khurana v. Innovative Health Care Sys.*, 130 F.3d 143, 151 (U.S. 5th Cir. 12/12/97); see also *Zervas v. Faulkner*, 61 F.ed 823, 833 (U.S. 5th Cir. 12/15/88) ("A requirement that the nexus between the injury and a predicate act be 'direct' may . . . be overly restrictive."); *Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 263 (4th Cir.

*Dr. Says, LLC*, 22 U.S. Dist. LEXIS 60158, (USDC EDTX 03/31/22) involved a RICO claim by a husband and a wife for injury to, amongst other things, the husband's business.  In that matter, the Court stated:

> The RICO standing provision is found in 18 U.S.C. § 1964(c). That subsection states:
>
> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.[25]
>
> …
>
> Plaintiffs assert that Diane suffered injury to her business and property in the form of lost profits from Display Graphics and from attorneys' fees incurred to secure her release from BHB. Defendants argue that Diane cannot have suffered a business loss because she does not own Display Graphics, and each of her alleged property losses stem from the personal injury she suffered. Accordingly, Defendants conclude that the evidence is insufficient to confer RICO  standing for Diane.
>
> The Court finds, and reasons below, that Diane has standing under RICO because she suffered property loss in the form of lost profits and attorneys' fees and proved these injuries at trial with sufficient evidence to support the jury's findings. Further, these injuries were not derivative of her personal injuries.[26]

The Court went on to say that the Plaintiff's entitlement to the lost profits, *even though she was not an owner of the company*, was due to the fact that she lived in a community property state and she was married to the owner.  Thus, the fact that she wasn't the owner of the company did not prevent her from standing under RICO.  In the same respect, Plaintiffs herein, even though they are not currently the owners of the companies at issue herein, are entitled to proceed with a RICO claim.  Plaintiffs have *pled* that the reason they aren't currently the owners of the companies

---

1994) (rejecting adoption of a rule that only injuries suffered by the immediate victim of a predicate act satisfy the "by reason of" requirement of § 1964(c)).

[25] *Creel v. Dr. Says, LLC*, 22 U.S. Dist. LEXIS 60158 *22, (USDC EDTX 03/31/22).

[26] *Id.* at *27.

at issue herein *is Defendants' RICO violations*.  Furthermore, the ruling by the Florida bankruptcy court that Plaintiffs are nominees does not eliminate their standing because said judgment is appealable and did not establish that Plaintiffs ever *agreed* to be anyone's nominee.[27]  Thus, Plaintiffs' alternative theory, which is they were fraudulently made to believe that the Options were theirs, gives them standing under RICO, as the damages in connection therewith could be specific performance of the Options or damages for the refusal to allow exercising of the Options, demonstrated by the profits of the Three Companies.

Additionally, just as with the Plaintiff in *Creel*, Plaintiffs have RICO damages for lost property in the form of attorney's fees.  Plaintiffs have paid hundreds of thousands of dollars in attorney's fees, *not in this matter*, but in the Florida bankruptcy court wherein Defendants *forced* Plaintiffs to participate in a forum and proceeding that they were not parties to and in violation of the forum selection clauses in the Option Agreements.

(D) **PLAINTIFFS HAVE PLED AN ASCERTAINABLE LOSS AND THE REQUISITE "ENTERPRISE."**

Defendants argue that Plaintiffs lack standing because Plaintiffs' injury is "mere expectancy interests or to an intangible property interest."  This argument is illogical.  The property

---

[27] Under Louisiana law one must agree by contract to be a nominee.  A nominee of a contract is categorized as a mandatary. See *Petrocana, Inc. v. William H. Kenny Consultants, Ltd.,* 595 So. 2d 384, 385 (La. Ct. App. 1992) ("The term "nominee" has been defined by the jurisprudence of this State as a mandatary") (see also *Evergreen Plantation, Inv. V. Zunamon*, 291 So.2d 414 (La.App. 2 Cir. 1974); *United States v. Lewis*, 2013 U.S. Dist. LEXIS 188714 (USDC WDLA 05/03/13).  "Manifestly, the nominee is not really a third party but only an 'alter ego' of the original vendee and as such nominee he stands in the same position as the one he represents, the original vendee." *Evergreen* @ 417.  Furthermore, the establishment of a mandatary requires a contract between the mandatary and the principal.  See Louisiana Civil Code article 2989 ("A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal.")  Importantly, the authority of a mandatary to acquire property for the principal requires some form of express authorization given by the principal. In other words, there is no general power of mandate assumed or presumed under a contract of mandate for the acquisition of immovable or movable property—corporeal or incorporeal—by the mandatary. See Louisiana Civil Code article 2996 (The authority to alienate, acquire, encumber, or lease a thing must be given expressly. (emphasis added).

interests, as pled, are by no means intangible.  Plaintiffs pled that they and the Defendants, Faia

and Decossas, executed Option Agreements giving them the right to become 100% owners of the

Three Companies.  That is tangible.  That is identifiable.  And that is calculable.

In *Khurana v. Innovative Health Care Sys.*, 130 F.3d 143, 151 (U.S. 5th Cir. 12/12/97), the

Court stated:

> Regarding Khurana's claimed loss of legitimate business opportunity, we begin our
> consideration by noting that RICO civil standing is not limited to only the
> immediate victim of a defendant's RICO violation. See Zervas v. Faulkner, 861
> F.2d 823, 823, 833 (5th Cir. 1988) ("A requirement that the nexus between the
> injury and a predicate act be 'direct' may . . . be overly restrictive."); Mid Atl.
> Telecom, Inc. v. Long Distance Servs., Inc., 18 F.3d 260, 263 (4th Cir. 1994)
> (rejecting adoption of a rule that only injuries suffered by the immediate victim of
> a predicate act satisfy the "by reason of" requirement of § 1964(c)). In Mid Atlantic,
> a plaintiff telephone company accused one of its competitors of violating RICO by
> defrauding its customers with fictitious charges, enabling it to charge lower rates to
> entice new subscribers. The plaintiff company alleged that it lost revenues from
> subscribers who were defrauded into accepting the fraudulent lower rates of the
> defendant company. The Fourth Circuit rejected the argument that the plaintiff
> company lacked standing because the customers were the directly injured parties
> and only they were proximately injured by its alleged misconduct. Similarly,
> Khurana may not have been the intended target of the fraud scheme, but like the
> telephone company in Mid Atlantic, he pleaded the loss of a legitimate business
> opportunity resulting from the defendants' alleged racketeering acts. Holmes did
> not preclude a RICO claim for "indirect" injuries, but rather instructed the federal
> courts to employ common law proximate causation principles. See *Israel Travel*,
> 61 F.3d at 1257. Some indirect RICO injuries, such as this one, satisfy the
> proximate causation requirements of common law. *Id.* In fact, we have previously
> rejected a direct versus indirect injury test as the dispositive standing inquiry for
> civil RICO claims. See *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868
> F.2d 740, 746 (5th Cir. 1989); see also *Reynolds v. East Dyer Dev. Co.*, 882 F.2d
> 1249 (7th Cir. 1989) (avoiding using direct versus indirect terminology to make
> standing determinations and instead focusing on causation); Prosser & Keeton on
> Torts § 42, p. 273-74 (discussing direct versus indirect as only one of several
> theories of proximate causation).

> In *Mid Atlantic*, the Fourth Circuit noted that the plaintiff was not seeking to
> vindicate the claims of its competitor's customers, but  rather its own alleged
> distinct and independent injuries of lost customers and lost revenues. 18 F.3d 260
> at 264. We agree with the Fourth Circuit that distinct and independent injuries are
> in keeping with the Supreme Court's understanding of proximate cause in *Holmes*.
> Khurana pleads his own injury of loss of legitimate employment opportunity. In

*Holmes*, an intervening event, the insolvency of the securities brokership, broke the causal link between the plaintiff's injury and the defendant's conduct, 503 U.S. at 262, 264, so that the plaintiff was a "secondary victim." Id. at 274. In contrast, the plaintiff in this case seeks to recover for losses substantially attributable to the defendants' conduct.

Similarly, the Court in Livingston Downs Racing Ass'n v. Jefferson Downs Corp., 192 F.

Supp. 2d 519 (MDLA 08/13/01) stated the following:

> Defining the scope of proximate cause for purposes of RICO standing has proven an elusive task. See, e.g., *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992) (noting that "the infinite variety of claims that may arise [under RICO] make it virtually impossible to announce a black-letter rule [of proximate causation] that will dictate the result in every case."). In *Holmes*, the Supreme Court directed courts to look to "the many shapes this concept took at common law." *Id*. at 268. The Fifth Circuit has interpreted Holmes as holding merely that "common law ideas about proximate causation inform the understanding of RICO." *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 565 n.53 (5th Cir. 2001)(citing *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1257 (7th Cir. 1995)). Accordingly, it has been held that the pertinent inquiry in determining the existence of proximate cause is "whether the conduct has been so significant and important a cause that the defendant should be held responsible." *Chisolm v. TransSo. Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996) (quoting Prosser & Keeton on Torts § 42, p. 272 (5th ed. 1984)). The proximate cause determination for RICO standing is guided by indications of preconceived purpose, specifically intended consequence, necessary or natural result, reasonable foreseeability of result, the intervention of independent causes, whether the defendant's acts are a substantial factor in the sequence of responsible causation, and the factual directness of the causal connection. See, e.g., *Chisolm*, 95 F.3d at 338; *In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994); *Standardbred Owners Ass'n v. Roosevelt Raceway Assocs.*, 985 F.2d 102, 104 (2d Cir. 1993).

Additionally, the Court in Advanced Business Systems, Inc. v. Philips Information

Systems Co., 750 F. Supp. 774, 778 (EDLA 11/09/90) stated the following:

> This Court finds that Fifth Circuit law has interpreted that the phrase "injury to business or property" flowing from a violation of § 1962(c) can include lost profits, subject to proof of such proximately caused damages, and joins in the approach taken by other trial courts in this inquiry. See, e.g., Sound Video Unlimited, Inc. v. Video Shack, Inc., 700 F. Supp. 127 (S.D.N.Y. 1988) (adopted Dement analysis); [**13]  DeMent v. Abbott Capital Corp., 589 F. Supp. 1378 (N.D. Ill. 1984) (no bar in RICO to recovery of lost profits; lost profits subject to ordinary limitations

concerning remoteness (or proximate cause) and speculativeness (or certainty); burden on plaintiff to prove entitlement to lost profits damages).

Plaintiffs' pleadings fall squarely within the parameters of RICO standing as established by these cases.  As in *Khurana*, Plaintiffs seek, amongst other things, loss of business opportunity. As with *Livingston*, it is clear that the proximate cause of Plaintiffs' damages, i.e. injury to business or property, was Defendants' RICO actions.  And it is clear that just as in *Philips*, Plaintiffs have standing to bring a RICO claim for lost profits, which can be determinable.[28]

Additionally, Defendants' contention that Plaintiffs have not pled a valid RICO enterprise is a desperate attempt to avoid scrutiny of their actions by a Louisiana jury in a Louisiana court. A RICO enterprise is "a group of individuals associated in fact."[29]  "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[30]  In their brief, Defendants confuse relatedness, required by RICO, with an erroneous claim of all entities being identical.  The four RICO enterprises—law firm, DSE Leasing, Ad Squared, and Visual Ad Group—are distinct but related, each playing a distinct role in the criminal enterprise (see ¶180 through ¶184 of the Second Amended Complaint). Defendants misdirect to the original complaint mentioning "various other entities," overlooking its elimination in the second amended complaint.  The racketeering pattern comprises wire fraud and five other detailed predicate acts. Pleading an association-in-fact enterprise isn't mandatory, and Plaintiffs haven't asserted one.

---

[28]  See Am. Compl., at ¶¶26,156,199,207,324,362,364,414,516,536-37,610, and 619.
[29] *United States v. Urquidi*, 71 F.4th 357 (5th Cir.06/22/23)
[30] *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009).

Notably, while paragraph 292 of the Second Amended Complaint states that this is a single claim but it does not say there is only one RICO violation. The subsequent paragraphs show three separate RICO violations.  In 1962(a) or 1962(b) violations, the RICO enterprise and person can be combined or separate, and Plaintiffs pled both scenarios herein.  A 1962(c) violation  requires the enterprise to be separate from the RICO persons which are the defendants. These are plead separately:  1962(c) RICO Persons (Defendants): Greg Faia and Vernon Decossas; 1962(c) RICO Enterprises: Ad Squared, Visual Ad Group, DSE leasing, and Faia and Associates.  Unlike weak shotgun pleadings, Plaintiffs present numerous claims against various entities due to Defendants' involvement in a widespread criminal enterprise concealing over one hundred million dollars in revenue. Detailed RICO violations expose the complex network created by Faia and Decossas to hide fraud and account for substantial transactions.  Finally, each RICO violation delineated in the Second Amended Complaint contains a detailed analysis on how Plaintiffs' injury to their business or property was proximately caused by the substantive RICO violation.[31]

## CONCLUSION

Plaintiffs, Vivian S. Cahill and Michael H. Gardner, as personal representative for the Estate of Sandra F. Gardner, respectfully request this Court deny Defendants' Second Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (R. Doc. 78).

Dated:  New Orleans, Louisiana  
December 12, 2023

AARON & GIANNA, PLC.  
201 St. Charles Avenue – Suite 3800  
New Orleans, LA 70170  
(504) 569-1800 (telephone)  
(504) 569-1801 (fax)

By:  _____/s/ W. Glenn Burns_____  
W. Glenn Burns, Esq.  
Louisiana Bar No. 03698

---

[31] For 18 U.S.C. §1962(a), see Am. Comp., at ¶¶342-374; for 1962(b), see Am. Compl., at ¶¶403-417; for 1962(c), see Am. Compl., at ¶¶466-485; and for 1962(d), see Am. Compl., at ¶¶510-520.

gburns@aarongianna.com
William D. Aaron, Jr., Esq.
Louisiana Bar No. 02267
waaron@aarongianna.com
DeWayne L. Williams, Esq.
Louisiana Bar No. 27685
dwilliams@aarongianna.com

*Counsel for Vivian Solares Cahill and Estate of Sandra F. Gardner*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Requests on all counsel record by electronic correspondence or by depositing same in the U.S. Mail, postage prepaid, this 12th day of December, 2023.

_____ /s/ W. Glenn Burns _____
W. Glenn Burns, Esq.
Louisiana Bar No. 03698
gburns@aarongianna.com