UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIVIAN S. CAHILL and THE ESTATE OF SANDRA F. GARDNER, by its Personal Representative, Michael H. Gardner,<br><br>Plaintiffs<br>vs.<br><br>GREGORY G. FAIA, VERNON H. DECOSSAS III, FAIA & ASSOCIATES, LLC, ADS SQUARED LLC, VISUAL AD GROUP, INC., and DSE LEASING, LLC,<br><br>Defendants | Case No.:   22-cv-00543-SM-DPC<br><br>Judge:        SUSIE MORGAN<br><br>Magistrate: DONNA PHILLIPS<br>                     CURRAULT |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER, AND ALTERNATIVE MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(7) AND 12(B)(6)**

Defendants Gregory G. Faia, Vernon H. Decossas III, Faia & Associates, LLC, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC ("Defendants") respectfully submit this Reply Brief in support of their **first** motion to dismiss, which seeks (1) dismissal or, alternatively, a transfer, pursuant to the First-to-File Rule; and (2) alternatively, dismissal of the operative complaint or particular claims under Federal Rule of Civil Procedure 12(b)(7) or 12(b)(6).

**I.      DEFENDANTS' UNDERLYING MOTION**

In their first motion to dismiss, Defendants sought dismissal of the operative complaint based upon three principal arguments: (1) that a case involving the same parties and same claims is already pending in Florida; (2) that the Plaintiffs' relatives are the real parties in interest and therefore indispensable parties under Rule 19; and (3) that, because Plaintiffs were admittedly aware of the alleged misconduct in 2019-2020, Plaintiffs' 2022 lawsuit cannot raise any claims that are subject to 1-year prescriptive periods.

1

## II.     THE FLORIDA COURT'S DECEMBER 1 RULING

In the intervening time since Defendants filed their motion to dismiss, the U.S. Bankruptcy Court in Florida orally announced a lengthy ruling in favor of Defendants and against Plaintiffs. *See* Doc. # 86-6 (incorporated herein by reference). In essence, the lengthy ruling (the "Florida Ruling") unequivocally holds that Plaintiffs have no standing or right to assert any claim to the all-important "Options" or to any interest in the underlying "Three Companies." *See id.* Importantly, the Florida Ruling is in every way as relevant and dispositive as Defendants have always predicted it would be—a damning rejection of Plaintiffs' claims and every misrepresentation on which they depend. While the Florida Ruling must be read in its entirety in order to give weight to every finding that supports collateral estoppel, among the Florida Court's findings are as follows:

> Oh, what a tangled web we weave when first we practice to deceive. . . . Once the web's strands are straightened, they lead to the well-supported conclusion that Solares and Gardner, not their family members, were the beneficial owners of the rights to exercise the options. Therefore, any such rights were released by them in the settlement agreement.
> . . . .
> Solares and Gardner insisted on the creation of documents, which we call the Protection Documents, to protect their ownership rights in the new companies, which included, most notably for purposes of this trial, DNC Holdings, DOM Holdings, Inc. -- excuse me, DNC Holdings, Inc., DOM Holdings, Inc., and Domain Apps, LLC. Collectively I refer to them as the Three Companies.
> . . . .
> The end game, at least from Solares's and Gardner's perspective, was always for them to retain ownership and control of their assets while avoiding the outward appearance to creditors and the government that they still own them.
> . . . .
> Numerous recorded conversations and electronic written communications made at or near the time that the options were drafted demonstrate that the options were created for the benefit of Solares and Gardner, not Vivian and Sandra . . . . [and] the recordings provide some of the most compelling evidence imaginable.
> . . . .
> The record is rife with contemporaneous discussions about inserting names of family members in the options as mere placeholders for later use by Solares and Gardner to take back their assets.
> . . . .

> Written communications also demonstrate that the use of family member's names in the option was not done to give these family members the right to exercise the options for their own benefit. They support the Plaintiffs' position that the options were for the benefit of Gardner and Solares. In an email dated April 19, 2012, for example, Solares writes to Decossas: "On the options me and Michael could pay, the prices to you, Greg, and then substitute names. So Michael for Michael. I would have my sister's, et cetera."
> . . . .
> Notably, no evidence was presented to suggest either Vivian or Sandra participated in any way in drafting the options. Neither woman participated in the recorded conversations about the options that were played during the trial and none of the written communications offered into evidence discuss an intent on anyone's part to give Vivian and Sandra options so that they could each acquire for themselves 50 percent of stock of the Three Companies.
> . . . .
> Simply put, the Court finds that the options were not drafted to give Vivian and Sandra the right to purchase interests in the Three Companies for their own benefit.
> . . . .
> Thus the options were obviously included in the issues the settlement was intended to resolve.

Doc. # 86-6 at 8-10, 13, 36, 37, 37, 48, 48-49, 58.

Significantly, the Florida Ruling notes that the positions taken by Plaintiffs in *this* very proceeding (the E.D. La.) are "**identical**" to, and categorically irreconcilable with, the previous claims and positions taken in the Florida court. As explained by Judge McEwen:

> The evidence most damaging to the Nominee Defendants in this proceeding on the issue of who the options were intended to benefit, is the prior oral and written statements made by Solares and Gardner, themselves. Straight from the horse's mouth, including recorded conversations, email statements, sworn statements, and statements made in verified pleadings. To the extent these two testified at trial that the options were intended to benefit Vivian and Sandra, a full 180-degree turn from prior contradictory statements they have made over the course of the past 10 years as reflected in the record of this proceeding, the Court gives little to no weight to such testimony. The full 180-degree turn is evidence from the striking identicality with just a change of names between the Joint Proceeding and the second Louisiana lawsuit, the one that was filed by the Nominee Defendants in [the E.D. La. federal court in] June of 2022. In the choice between, "are they lying now or were they lying then?", the Court accepts as true the prior statements over the current ones.

Doc. # 86-6 at 51-52.

5472849.v1

Even more significantly, the Florida court did not just find that Gardner (who is the only witness who testified concerning Sandra Gardner) and Solares were lying; rather, the court also found that Vivian Cahill was "not credible" and that her claim to have signed the "Options" or to genuinely believe her own position was "unbelievable":

> Aside from [one exchange of] emails, no evidence in the form of written or recorded communication of any kind was offered to support Vivian's story that she actually went to Faia's office on August 25th, 2011, and signed an option for DNC and DOM or, if she did, that she understood what she was signing. The email exchanges just described actually undermine her testimony as to what occurred on August 25 because they suggest her attendance is rather unimportant and give no indication whatsoever that she is being asked to come to Faia's office to sign a document that gives her the right to purchase a half interest in companies worth millions of dollars.
> . . . .
> Vivian testified with regard to the options that, they were all "in my name and my own rights." Thus her testimony on this point came across as heavily coached, mechanical, and not credible. In the end, the only evidence offered by the Nominee Defendants to prove that the options were drafted with the intent to give the Nominee Defendants the right to exercise the options and thereby take full ownership of the Three Companies for themselves, were Vivian's own self-serving statements and similar statements by Solares and Gardner, which testimony was strongly outweighed by prior contradictory communications and conduct on the part of Solares and Gardner.
> . . . .
> As for Vivian's testimony, it seemed that she, too, prefers revisionist history with respect to the options. The Court got the impression from Vivian that she wanted to believe her own tale, but that she, at bottom, did not. In addition to appearing coached, Vivian expressed an absence of any emotional reactivity when confronted with facts about actions taken by Solares and Gardner to devalue the Three Companies or have them completely subsumed into TPI. If she genuinely believed that the options were for the benefit of her and Sandra, when Vivian learned, if not prior to trial, then during it, that her own brother had gone to great lengths to deprive her of that benefit, a reasonable person would expect to see some emotional reaction. Yet her voice remained flat and controlled while she testified.
>
> Further, she displayed not even a slight spark of indignation in her voice, body language, or facial expression at the notion that her brother's adversaries were, in this very proceeding, trying to take something away from her that she owns.
> . . . .
> [R]ecorded conversations . . . reveal without doubt that the story now being told by these two and the Nominee Defendants [(Vivian Cahill and Sandra Gardner)] about who controlled the options was weaved from further deceit and distrust.
> . . . .

4

> Equally unbelievable is the idea that Vivian and Sandra believed the rights to exercise the options belonged to them, and yet, although they knew about the Louisiana Action and possibly some of the other actions being taken that would violate the terms of the options and/or devalue the Three Companies, they took no action to stop them.
>
> . . . .
>
> Based on the evidence as a whole, the Court is convinced that the conduct of Vivian and Sandra, together with the conduct of Solares and Gardner since the day the options were allegedly executed, demonstrate that only Solares and Gardner considered themselves and held themselves out as the beneficial owners or holders of the rights purportedly granted in the options.

Doc. # 86-6 at 50-51, 53-54, 66, 72, 73.

### III. REPLY TO PLAINTIFFS' OPPOSITION ARGUMENTS

Particularly in light of the Florida Ruling, several points must be made in response to the Plaintiffs' opposition brief.

**A. Plaintiffs' opposition arguments are based upon a set of assertions that another court has already conclusively rejected.**

On December 1, the Florida bankruptcy court held that Plaintiffs in this matter have no right to the Options and therefore no ability to enforce the Options or claim any interest in the Three Companies. *See discussion supra*. Yet, when Plaintiffs filed their opposition brief eleven days later in this matter, they made no mention of the Florida Ruling against them or that the entire asserted basis of their claims in this matter has been judicially invalidated. Instead, Plaintiffs blindly continue to assert that they hold the Options and that this Court should help Plaintiffs to enforce them. *See* Docket # 85 at 14 ("[The] settlement could not include any of the claims set forth by Plaintiffs in this litigation . . . . Vivian Cahill and Sandra Gardner had Option Agreements with Gregory Faia and Vernon Decossas, III."). Plaintiffs' fraudulent premise infects nearly every argument made by Plaintiffs and therefore precludes any ruling in their favor.

**B. Plaintiffs' assertion that the Florida Litigation and the instant matter do not "overlap" is facially absurd.**

5

In the first of several brazen arguments, Plaintiffs suggest that the issues in the instant matter do not "substantially overlap" with the issues being debated in the Florida Litigation. *See* Docket # 85 at 8-10. This contention is easily addressed. Plaintiffs have themselves characterized the Options at issue in this matter as "the crux of this litigation" and the basis of every claim before this Court.[1] In Florida, the *same* Option documents and the *same* parties are before *that* court, which has been asked to determine whether the Options were ever executed, whether Plaintiffs held the right to the Options if they were executed, and what the consequences should be for the Plaintiffs' and their relatives' collective effort to fraudulently enforce the Options. To assert that the two cases are not materially related is truly an indefensible position, particularly when Plaintiffs previously told this Court that the rulings in Florida would potentially be "dispositive" and would "determine whether the Plaintiffs in this matter have any relevant rights not already released." *See* Docket # 20 at ¶¶ 3, 11, 12. On this limited point, Plaintiffs turned out to be absolutely correct: the Florida court has not only found that Plaintiffs do not hold the "Options" they seek to enforce in this Court, but also that Plaintiffs never honestly believed they did. Thus, every single claim and allegation in Plaintiffs' complaint is directly implicated—and actually barred—by the ruling now announced in Florida.

**C.     It is improper for Plaintiffs to ask this Court to determine that the Florida court has no jurisdiction.**

In another argument, Plaintiffs argue that this Court should not in any recognize the "first-to-file" rule, because the relevant first-filed court purportedly lacks jurisdiction. However, the only

---

[1] *See, e.g.*, Docket # 55 at ¶ 198 ("Vivian and Sandra, as the owners of DA by virtue of their exercise of the Options, have also been injured . . . "); ¶ 12 ("Plaintiffs Vivian and the Estate, individually, and as owners of the equity interests in the Three Companies by virtue of the exercise of the Options, also assert causes of action . . . involving breach of fiduciary duty, breach of contract, and conversion."); p. 3 ("The crux of this litigation are these Options: the Options in DOM, DNC, and DA were executed for the benefit of Vivian and Sandra.").

question before this Court in this context is whether the Florida case substantially overlaps with this proceeding. In other words, "at least in the Fifth Circuit, a second-filed court should not address subject matter jurisdiction before transferring a case to the first-filed court." *Texas Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co., Inc.*, 380 F. Supp. 3d 580, 588 (E.D. Tex. 2019) (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999) ("The district court correctly refused to act as a 'super appellate court' by entertaining either Cadle's jurisdiction or the defendants' standing arguments, and properly limited its inquiry to the potential overlap between the two cases. By so limiting its analysis, the district court indeed avoided trenching on the authority of its sister [bankruptcy] court.")).

Incidentally, the first-filed court has already considered Plaintiffs' jurisdictional objection and rejected it for multiple reasons. *See, e.g.*, Docket # 86-6 at 18-24. Any continuing jurisdictional objection is thus not only improper, but barred by general res judicata, claim preclusion, and/or comity principles. *See Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) ("A court's determination of its own jurisdiction is subject to the principles of res judicata; it generally may not be challenged in a collateral proceeding.").

    **D. No exceptions to the first-to-file rule are implicated in this matter.**

Plaintiffs additionally challenge the applicability of the first-to-file rule and argue that several "exceptions" preclude the rule's use in the instant case. First, Plaintiffs posit that Defendants unfairly rushed to file the first-filed suit in Florida, knowing that Plaintiffs were about to commence suit in Louisiana. In making this argument, Plaintiffs overlook the fact that they are, and have been found to be, the mere proxies of Solares and Gardner. Accordingly, in 2022, Defendants did not rush to file a new suit in a new forum, but merely returned to reopen a long-pending matter in an existing forum: the forum that Solares and Gardner first chose two years

7

earlier to enforce the Options, and which they later agreed had continuing jurisdiction over any connected matters. This Court should thus swiftly reject any suggestion that the M.D. Fla. bankruptcy court is anything other than the original and therefore most appropriate forum.

Plaintiffs' invocation of a forum selection clause is similarly unavailing. The cited clause is contained only in an unsigned contract draft which Plaintiffs never proved was executed. Moreover, to the extent Plaintiffs could invoke such a disputed forum selection clause, Plaintiffs waived that right when they formally agreed to submit the "nominee" question to the Florida court (*see* Docket # 20-2, incorporated herein). And that court, in turn, has now found that the supposed contract that contains the relevant forum selection clause is not a contract that the Plaintiffs have any right to enforce. Docket # 86-6 at 48-49, 58. Just as Plaintiffs cannot enforce any other provision of the Options—*see* Docket # 86-6—they cannot try to enforce its forum selection clause.

### E. Solares and Gardner, as the judicially-recognized real parties-in-interest, are indispensable parties.

The Florida court has now held that the Options that Plaintiffs seek to enforce are actually held by Solares and Gardner. Beyond any doubt, Solares and Gardner thus have "an interest relating to the action" that could be impacted by what occurs in this matter. *See* FED. R. CIV. PROC. 19(1). Moreover, Solares and Gardner are, at this very moment—through another entity that employs Vivian Cahill, Solares, and Gardner—pursuing active claims in Florida to obtain some of the **same corporate assets** that *Plaintiffs* are simultaneously trying to obtain in this Court. Compare Docket # 55 at ¶ 565 (seeking to enforce DNC Option and obtain control of DNC assets) to Florida Litigation, Docket # 188 at p 79-91 (seeking turnover of DNC assets). Because Plaintiffs and their relatives are contradictorily claiming the same Options and the same assets in different

forums, Defendants are exposed to the risk of multiple and inconsistent obligations if all claimants are not joined. *See* FED. R. CIV. PROC. 19(a).

    **F.    Plaintiffs have not in any way supported the assertion that their damage claims did not accrue until July 2021.**

With three unsupported sentences, Plaintiffs argue that their various fraud and LUTPA claims—arising out of Defendants' alleged pilfering of corporate assets—are timely because they did not accrue until July 2021. *See* Docket # 85 at 15. Plaintiffs specifically assert that, although they knew they had been damaged by Defendants' purported misconduct in "2019-2020,"[2] it was only when Plaintiffs announced their contractual claim (in July 2021) that prescription began to run. This is a wholly unsupported argument that is both irrational and incompatible with Louisiana law, and it should be rejected as such. *See, e.g., Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So. 2d 502, 510 ("Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."). Because Plaintiffs' damage claims began to accrue sometime in 2019 or 2020, the fraud and LUTPA claims subject to one-year prescriptive periods were barred by prescription before Plaintiffs filed their lawsuit in March 2022.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the previously-filed motion to dismiss and (1) dismiss or, alternatively, transfer this action to the Middle District of Florida pursuant to the first-to-file-rule; (2) dismiss Plaintiffs' action for failing

---

[2] Plaintiffs allege repeatedly that in 2019, 2020, and "2019-2020" they "discovered" the alleged actions and that the alleged actions were "revealed," via discovery produced in 2019-2020 in the Florida Litigation. *See* Docket # 55 at ¶¶ 23, 25, 62, 71, 72, 84, 117, 102, 103, 154, 163. For example, in paragraph 23, Plaintiffs allege, Vivian and Sandra "were advised in 2019-2020 that Faia and Decossas disavowed the existence of any executed protection documents, including the Options."

9

to join Solare as Gardner as required parties under Rule 19; and (3) dismiss Plaintiffs' civil LUTPA and delictual fraud claims as prescribed and perempted.

        Respectfully submitted,

        TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P


        By:    *Ryan K. French*
           Robert W. Barton, Bar # 22936
             Bob.barton@taylorporter.com
           John S. Campbell, III, Bar # 23674
             Johnstone.campbell@taylorporter.com
           Ryan K. French, Bar # 34555
             ryan.french@taylorporter.com
           450 Laurel Street, 8th Floor (70801)
           P. O. Box 2471
           Baton Rouge, LA 70821-2471
           Phone: (225) 381-0262

        ***Attorneys for Vernon H. Decossas III, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC***

        JONES WALKER L.L.P

           Michael W. Magner, Bar # 1206
             mmagner@joneswalker.com
           Andrew R. Lee, Bar # 21196
             alee@joneswalker.com
           Peter J. Kee, Bar # 34860
             pkee@joneswalker.com
           201 St. Charles Ave. Suite 5100
           New Orleans, LA 70170
           Phone: (504) 589-8316

        ***Attorneys for Gregory G. Faia, Faia & Associates, LLC, Ads Squared LLC, Visual Ad Group, Inc., and DSE Leasing, LLC***

        FRILOT, LLC

           David S. Daly, Bar # 20774
             ddaly@frilot.com
           1100 Poydras St. Suite 3700
           New Orleans, LA 70163
           Phone: (504) 599-8139

        ***Attorneys for Gregory G. Faia and Faia & Associates, LLC***

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this **20th** day of **December**, 2023, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and notice of this filing was accordingly sent to all counsel of record through the Court's electronic filing system.

                              /s/   *Ryan K. French*
                                  Ryan K. French

5472849.v1